# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA *ex rel.* Stephen Stepanishen, and STEPHEN STEPANISHEN, individually,**<br><br>Plaintiffs,<br><br>v.<br><br>**BEI PRECISION SYSTEMS & SPACE COMPANY, INC.,**<br><br>Defendant. | **Civil Action No. 4:20-cv-414-BRW** |

## RESPONSE TO DEFENDANT BEI PRECISION SYSTEMS & SPACE COMPANY, INC.'S MOTION TO DISMISS RELATOR'S COMPLAINT

This Court should deny Defendant's Motion to Dismiss Relator's Complaint, as Relator has pled sufficient facts to properly state a claim under the provisions of the False Claims Act, even under heightened particularity standards. Defendant improperly focuses its extensive briefing solely on the type of unnecessarily specific information that can only be obtained in discovery, not the level of fact pleading required to put the Defendant on notice at the pleading stage. As detailed below, Relator has, in accordance with the heightened standard for False Claims Act cases as outlined by the 8th Circuit, pled facts that put Defendant on notice as to the who, what, when and where of his allegations of wrongdoing. Accordingly, this Court should deny Defendant's Motion in its entirety.

Page 1 of 10
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.,* **4:20-cv-414-BRW**
**Relator's Response to Defendant's Motion to Dismiss Relator's Complaint**

## I.  LEGAL STANDARD AND RELEVANT LAW

A court may grant a motion to dismiss only if the complaint fails to contain "enough facts to state a claim to relief that is plausible on its face.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Although Rule 8(a)(2) requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," it does not require detailed factual allegations. *Iqbal,* 556 U.S. at 678. Rule 8(a)(2) is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 677.

A court must look ***only*** to the pleadings to determine whether a motion to dismiss must be granted; otherwise, the motion to dismiss must be converted to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Fullington v. Pliva, Inc.,* No. 4:10-cv-236-JLH, 2012 U.S. Dist. LEXIS 71589, *24 (E.D. Ark. May 23, 2012) ("When a court relies on matters outside the pleadings in considering a motion to dismiss, it must convert the motion to dismiss into a motion for summary judgment under Rule 56…").

Because the False Claims Act is an anti-fraud statute, complaints within its purview must comply with Rule 9(b) of the Federal Rules of Civil Procedure, which requires that a plaintiff "state with particularity the circumstances constituting fraud." *United States ex rel. Benaissa v. Trinity Health*, 963 F.3d 733, 739 (8th Cir. 2020).  The purpose of this heightened standard is to allow Defendant to "respond specifically and quickly to the potentially damaging allegations." *United States ex rel. Costner v. URS Consultants, Inc.*,

Page 2 of 10
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.,* **4:20-cv-414-BRW**
**Relator's Response to Defendant's Motion to Dismiss Relator's Complaint**

317 F.3d 883, 888 (8th Cir. 2003). This can be satisfied by pleading such facts as the "time, place, and content of defendant's false representations, as well as the details of the defendant's fraudulent acts, including gwhen the acts occurred, who engaged in them, and what was obtained as a result." *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006).

In meeting a relator's requirement to provide sufficient detail to allow the defendant to respond specifically and quickly, the relator need not present actual or representative examples of false claims, but can plead "the particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Benaissa*, 963 F.3d 733 at 739 (citing *United States ex rel. Strubbe v. Crawford Cty. Mem'l Hosp.*, 915 F.3d 1158 (8th Cir. 2019).).

Fraud in the inducement, in the realm of government contracts, is a recognized fact pattern to properly plead a claim under the False Claims Act. *See United States ex rel. Marcus v. Hess*, 317 U.S. 537 (1943). In *Marcus*, the United States Supreme Court held that there could be False Claims Act liability for each claim for payment submitted to the government under a contract so long as the original contract was obtained through "false statements or fraudulent conduct." *Id.*

The Eighth Circuit has further outlined the manner in which fraud in the inducement operates within the framework of the False Claims Act, holding that "when a relator alleges liability under a theory of fraud-in-the-inducement, claims for payment subsequently submitted under a contract initially induced by fraud do not have to be false or fraudulent in and of themselves in order to state a cause of action under the FCA."

Page 3 of 10
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.,* 4:20-cv-414-BRW
**Relator's Response to Defendant's Motion to Dismiss Relator's Complaint**

*United States ex rel. Simpson v. Bayer Healthcare (In re Bayer Prods. Litig.)*, 732 F.3d 869, 876 (8th Cir. 2013).

## II.   ARGUMENT

A. *Relator has properly pled claims that Defendant violated 31 U.S.C. §§ 3729(a)(1)(A) and 3729(a)(1)(B) by providing sufficiently specific allegations of the material misrepresentations that necessarily induced the entry into certain contracts.*

Because Relator has properly pled facts demonstrating the who, what, when, where and how of the alleged fraud, Defendant's Motion must be denied. Even the heightened pleading standard of FRCP 9(b) does not require a perfect factual recitation at the pleading stage, but instead sufficient factual allegations to allow a specific and quick response from the Defendant. As more clearly outlined below, Relator has alleged that Defendant, on or around September of 2019, made a material misrepresentation as to the space-tested quality of a its new optical encoder series, after which it entered into multiple government prime and sub-prime contracts to produce those optical encoders in exchange for monetary payment. This is exactly the kind of specific timeline and detailed allegations, including the attachment of the exact alleged misrepresentation in Relator's Disclosure Statement, that puts Defendant on sufficient notice of the allegations it is to defend.

In paragraphs 32 through 43 of his Complaint, Relator thoroughly outlines the manner in which Defendant's use of the specific term "space qualified" in the advertising material attached to the Complaint constitutes a material misrepresentation. These allegations are not conclusory or vague: they specify the date of the advertisement (September 2019, ¶ 35), the highly specific products in question (Nanoseries ARA, Nanoseries Track and Nanoseries AIME-II optical encoders, ¶ 34), the exact meaning of

Page 4 of 10
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.,* **4:20-cv-414-BRW**
**Relator's Response to Defendant's Motion to Dismiss Relator's Complaint**

the term of art fraudulently used by Defendant (¶ 37), and the complete lack of any testing to substantiate the use of that term of art (¶¶ 38-40).

Relator further alleges that Defendant not only fraudulently advertised these encoders as space qualified, but actually entered into government contracts to produce them, specifying the parties to those agreements. *See* ECF No. 1, Relator's Original Complaint at ¶¶ 41-42. Common logic and Relator's own personal knowledge of this industry support Relator's allegation that the encoders being "space qualified at various dimensions was a material condition of the government entering these agreements." *Id.* at ¶46.

That Relator cannot name the specific contract or contract number for these optical encoders is not grounds for dismissal of his Complaint, particularly because Relator's access to such privacy-sensitive documentation and information was necessarily limited by his alleged unlawful termination. Defendant does not have so many government contracts for these specific optical encoders, entered into between September 2019 and the time when Relator was terminated in March 2020, that it can claim to suffer from lack of notice as to which agreements Relator is referring. Simple discovery will provide the firm identification of the contracts of which Relator has already provided sufficient detail.

As to presentment requirements and fraudulent claims for payment, the *Martin* and *Simpson* cases cited above stand for the principle that once the government has been fraudulently induced into a contract for products or services, that contract is tainted and even legitimate claims for payment stemming from work performed pursuant to those contracts constitute violations of the False Claims Act. Relator clearly and specifically alleges from his personal knowledge leading the work on the projects that significant work

**Page 5 of 10**
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.,* **4:20-cv-414-BRW**
**Relator's Response to Defendant's Motion to Dismiss Relator's Complaint**

on the optical encoders was billed to the government on various contracts, including issues with prism lens platings, LED light issues and other design flaws. *See* ECF No. 1 at ¶¶48-50.

Even beyond the tainted work described by those allegations, however, Relator also describes actual billing fraud as well, outlining how during this late 2019/early 2020 time-period he was directed on multiple occasions by Program Manager David Dam and direct supervisor Steven Park to fraudulently bill his work to contracts other than the contract that he was supposed to be billing to, because those contracts had room to pay for additional development costs and others did not. *See* ECF No. 1 at ¶ 54. Relator even provides the specific contract under which he was directed to fraudulently bill his work, the Harris CrIS contract, which had room for additional costs but wasn't receiving the benefit of Relator's work. *Id.* at ¶ 55. This allegation clearly provides the who, what, when, where and how of a specific representative instance of a claim for payment which was fraudulent. Standing alone, even without the additional allegations described above, it is sufficient to survive a Motion to Dismiss and put the Defendant on notice.

All told, Relator has pled his allegations with sufficient particularity to meet the 9(b) heightened standard as applied to the False Claims Act. The allegations he has made outline the when, who, how and why of the alleged fraudulent inducement, and they are neither conclusive nor vague. Defendant has been properly put on notice and should be held to answer Relator's Complaint.

B. *Relator has properly pled facts sufficient to state a claim for retaliation under the False Claims Act.*

Similarly, Relator has pled sufficient facts to state a claim for retaliation under the False Claims Act, outlining the numerous instances in which he internally blew the whistle

Page 6 of 10
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.,* **4:20-cv-414-BRW**
**Relator's Response to Defendant's Motion to Dismiss Relator's Complaint**

on the alleged fraudulent activities, and establishing the proximity of those complaints to his pretextual termination for an issue that had never existed in more than twenty prior years of employment for Defendant.

There are four elements to an FCA retaliation claim: 1) the relator was engaged in protected activity; 2) his employer knew he was engaged in protected activity; 3) his employer retaliated against him; and 4) the retaliation was motivated solely by his protected activity. *Benaissa,* 963 F.3d at 742 (citing *Strubbe*, 915 F.3d at 1166-67). Relator has properly alleged facts relating to each of these elements.

First, Relator detailed how he "pushed back on multiple occasions, expressing to multiple individuals and his direct supervisor that he believed the billing would be fraudulent and that much of the work on the encoders constituted fraud." ECF No. 1 at ¶ 56. Relator details by name the individuals that he discussed this with (Steven Parker, Ray Reed, Heath McKoin and Andy Chouinard), the number of occasions (at least five), and the timeframe of the communications (beginning in November of 2019 and continuing through Relator's termination). Id. at ¶¶ 57-59. These allegations, when taken as true, clearly satisfy the first two elements of an FCA retaliation claim, outlining in detail the protected activity engaged in and employer knowledge requisite to state a claim.

Relator has also sufficiently alleged the manner in which his employer retaliated against him and the manner in which such retaliation was motivated by the protected activity. Relator alleges that his first negative performance review at the company in more than twenty years of employment there coincided exactly with the beginning of his internal whistleblower efforts. Id. at ¶ 60. Despite not changing anything about the manner in which he communicated or worked, other than beginning to voice concerns regarding the

**Page 7 of 10**
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.,* **4:20-cv-414-BRW**
**Relator's Response to Defendant's Motion to Dismiss Relator's Complaint**

encoder project and its associated billing issues, Plaintiff received a performance review citing communication and behavior issues that had never before received such criticism. Id. at ¶ 61. This change in performance review could only, by virtue of Plaintiff not altering his communication style or attitude from the previous two decades of status quo, have only been related directly to his continued efforts to internally draw attention to the suspected fraudulent activity.

Such a conclusion is supported by the timing and proximity of the negative performance review, the Last Chance Agreement, and Relator's subsequent termination (which together comprise the adverse employment actions taken in retaliation by Defendant that give rise to his claim). The negative review came the same month Relator began communicating his concerns to his supervisors, the Last Chance Agreement came only one month after that, and after continued internal reports of suspected fraud, his termination came only three months later. ECF No. 1 at ¶¶ 61-63. The cumulative nature of these allegations, taken in the light of the nonmoving party, demonstrate a clear link between Relator's protected activity and the quick firing of an important Reliability Engineer who had been working on many of Defendant's most important projects over more than two decades.

    C. *In the alternative, Relator should be granted leave to cure any deficiencies through an Amended Complaint.*

Though Relator has met the pleading standards required of him under the federal rules, should this Court desire additional facts to buttress his allegations, then Relator should be granted leave to cure any issues raised by Defendant in its Motion. Relator has not yet amended his Complaint, and Relator believes he can, if necessary, add additional factual allegations surrounding the nature of the encoder contracts, the work pursuant to

Page 8 of 10
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.,* **4:20-cv-414-BRW**
**Relator's Response to Defendant's Motion to Dismiss Relator's Complaint**

those contracts, communications with supervisors surrounding the suspected fraud, and communications with supervisors surrounding the pretextual reason for his termination. Rather than dismissing his Complaint, the more fair alternative is to allow Relator the opportunity to cure any perceived defects.

### III.   CONCLUSION

Despite the heightened pleading standards imposed under the False Claims Act, Relator has met his burden and alleged facts of sufficient particularity so as to provide notice to the Defendant of the details of its alleged fraudulent activity. Relator's allegations as to the who, what, when, where and how of the fraudulent inducement, including but not limited to the exact language of the fraud and the identification of the specific types of contracts resulting therefrom, clearly and properly states a claim for relief under the False Claims Act and its various subsections. Defendant's Motion, which seeks an unnecessary and overly burdensome level of particularity for this stage of the proceedings, should be denied. In the alternative, Relator requests leave from this Court to file an Amended Complaint further outlining his allegations.

**Page 9 of 10**
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.,* **4:20-cv-414-BRW**
**Relator's Response to Defendant's Motion to Dismiss Relator's Complaint**

Respectfully submitted,

**SANFORD LAW FIRM, PLLC**

One Financial Center
650 South Shackleford, Suite 411
Little Rock, Arkansas 72211
(501) 221-0088 (office)
(888) 787-2040 (fax)

Daniel Ford
Ark. Bar No. 2014162
daniel@sanfordlawfirm.com

Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on the date imprinted by the CM/ECF system, a true copy of the above Response was served upon the following:

John E. Tull III (84150)
E. B. Chiles IV (96179)
QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, Arkansas 72201

Jason M. Crawford (*pro hac vice*)
William Tucker (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004

Shannon Smith, Esq.
Office of the United States Attorney
425 West Capitol Avenue Suite 500
Little Rock, Arkansas 72201

/s/ Josh Sanford
**JOSH SANFORD**

Page 10 of 10
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.,* 4:20-cv-414-BRW
**Relator's Response to Defendant's Motion to Dismiss Relator's Complaint**