IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.*<br>Stephen Stepanishen, and STEPHEN<br>STEPANISHEN, individually, | | PLAINTIFFS |
| v. | 4:20-CV-00414-BRW | |
| BEI PRECISION SYSTEMS & SPACE<br>COMPANY, INC. | | DEFENDANT |

### ORDER

Pending is Defendant's Motion to Dismiss (Doc. No. 28). Plaintiffs have responded and Defendant has replied.[1] For the reasons set out below, the motion is GRANTED IN PART and DENIED IN PART.

**I.   BACKGROUND**[2]

This case began on April 16, 2020 as a *qui tam* action under the federal False Claims Act ("FCA").[3] Under the FCA, *qui tam* actions must remain under seal and kept confidential from outside parties, including the defendant, for at least sixty (60) days, while the United States Government investigates the relator's allegations and decides whether to intervene.[4] Here, following an investigation into the Relator's allegations, the government decided not to intervene

---

[1] Doc. Nos. 34, 37.

[2] Unless otherwise noted the Background Section comes from the Complaint (Doc. No. 1).

[3] 31 U.S.C. §§ 3729 *et seq*.

[4] See 31 U.S.C. § 3730(b)(2).

in the case on February 22, 2022.[5] The Complaint was unsealed and served on Defendant May 2, 2023.[6]

Between 1998 and March 5, 2020, Relator worked for Defendant as a reliability engineer. Defendant manufactures a variety of parts "for military, space, aviation, range tracking, and scientific programs." Relator's job was to "ma[k]e sure that products were testing the way that they were supposed to, being produced the way they were supposed to, and met the parameters of the production contract."[7]

Beginning in September 2019, Defendant advertised a new product line of optical encoders,[8] which it advertised as "space qualified." After entering into several contracts, Defendant discovered flaws with its design and production of these parts. Relator contends that while attempting to correct these problems, Defendant directed him to bill his work to the wrong contracts. Relator raised concerns to his superiors about Defendant's alleged failure to properly test these parts and inform the government about the production issues.

At the time Relator raised concerns about the billing and production issues, he also received negative performance reviews relating to his communication style and attitude at the workplace. On December 19, 2019, Relator was put on a Last Chance Agreement. He was fired on March 5, 2020 for violating the terms of the Last Chance Agreement.

Relator contends that:

Defendant knowingly (a) caused to be presented or presented false claims to the United States Government through agencies including but not limited to NASA and the Department of Defense; (b) made or caused to be made or used false records or

---

[5] Doc. No. 14.

[6] Doc. No. 16.

[7] Doc. No. 1, p. 8.

[8] According to the Complaint, an optical encoder is a "component for space satellites."

statements material to these false claims; causing services to be billed to the improper government contract; (c) conspired to cause these records and/or statements to be made or used, and/or these claims to be presented to the United States Government; and (d) improperly avoided the obligation to return the payments they received as a result of their fraud.[9]

Additionally, Relator contends that he was fired because he "alerted Defendant that it was likely in violation of the law."[10]

Defendant contends the Complaint should be dismissed under Rules 12(b)(6), 9(b), and 8(a) of the Federal Rules of Civil Procedure. Relator contends that Defendant incorrectly focuses its arguments on the type of specific information that can only be obtained in discovery, not the level of fact pleading required at this stage of the case.

## II.     APPLICABLE LAW

To survive a motion to dismiss, a pleading must provide "a short and plain statement of the claim that the pleader is entitled to relief."[11] The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."[12] When ruling on motions under either Rule 12(b)(6) or Rule 9(b), the Court accepts the factual allegations in the complaint as true, drawing all reasonable inferences in favor of Plaintiffs, as the non-moving party.[13]

Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates the dismissal of a claim if there has been a failure to state a claim upon which relief can be granted. To survive a motion to

---

[9] Doc. No. 1, p.2.

[10] *Id.* at 3.

[11] Fed. R. Civ. P. 8(a)(2).

[12] *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[13] *Drobnak v. Anderson Corp.*, 561 F.3d 778, 781 (8th Cir. 2008).

dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[14] A plaintiff must show that success on the merits is more than a "sheer possibility."[15] A complaint is sufficient if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16] The court need not accept legal conclusions or "formulaic recitation of the elements of a cause of action" in the complaint as true.[17] A complaint does not "suffice if it tenders a naked assertion devoid of further factual enhancement."[18] Dismissal will not be granted unless it appears beyond doubt the plaintiff can prove no set of facts entitling the plaintiff to relief.[19]

"Because the FCA is an anti-fraud statute, complaints alleging violations of the FCA must comply with Rule 9(b)."[20] "Rule 9(b)'s 'particularity requirement demands a higher degree of notice than that required for other claims,' and 'is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations.'"[21] When determining whether a complaint complies with Rule 9(b), the Court must consider whether the complaint states "with

---

[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[15] *Id.*

[16] *Id.*

[17] *Id.* at 681.

[18] *Ashcroft*, 556 U.S. at 678 (2009).

[19] *Ulrich v. Pope Cnty*, 715 F.3d 1054, 1058 (8th Cir. 2013).

[20] *United States ex rel. Joshi v. St. Luke's Hospital, Inc.*, 441 F.3d. 552, 556 (8th Cir. 2006).

[21] *Id.* (quoting *United States ex rel. Costner v. URS Consultants, Inc.*, 317 F.3d 883, 888 (8th Cir. 2003)).

4

particularity the circumstances constituting fraud or mistake."[22]  A plaintiff must plead such matters as the time, place and contents of the allegedly false representations, as well as the identity of the person making the representations and what was obtained or given up.[23] "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient" to satisfy Rule 9(b).[24]

### III. DISCUSSION

The FCA allows private citizens to recover damages on behalf of the United States from anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim . . . ,"[25] or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."[26]

#### A. Counts I and II

To state a claim under § 3729(a)(1)(A), a relator must allege: (1) the defendant made a claim against the United States; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent.[27] Additionally, the "falsehood in the claim must be material to the payment decision."[28] A person is liable under 31 U.S.C. § 3729(a)(1)(B) when such person

---

[22] Fed. R. Civ. P. 9(b).

[23] *Schaller Tel. Co. v. Golden Sky Systems, Inc.*, 298 F.3d 736, 746 (8th Cir. 2002).

[24] *Id.* (quoting *Commercial Prop. v. Quality Inns*, 61 F.3d 639, 644 (8th Cir. 1995)).

[25] 31 U.S.C. § 3729(a)(1)(A).

[26] *Id.* § 3729(a)(1)(B).

[27] *Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063, 1070 (8th Cir. 2016).

[28] *Id.* (emphasis added); see also *Universal Health Servs. v. United States ex rel. Escobar*, 579 U.S. 176, 181 (2016) ("A misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act.").

"knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."[29]

The crux of Relator's false claim causes of action is that the Defendant falsely advertised its optical encoder as "space qualified." Relator must connect the allegedly false advertisement to the government's decision to contract for the purchase of the encoders and make payments under the contract for the advertisement to be material to the claim.

The Supreme Court has cautioned that the FCA is "not an all-purpose anti-fraud statute or a vehicle for punishing garden-variety breaches of contract or regulatory violations."[30] It has instructed that "[t]he materiality standard is demanding" and requires more than allegations of "minor or insubstantial" violations.[31] The FCA defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."[32]

In applying *Escobar*, the Eighth Circuit has held that a relator must show that "the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision."[33] Factors relevant to the materiality analysis include (1) "the Government's decision to expressly identify a provision as a condition of payment"; (2) whether "the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement" or pays the

---

[29] 31 U.S.C. § 3729(a)(1)(B).

[30] *Escobar*, 579 U.S. at 194.

[31] *Id.*

[32] 31 U.S.C.A. § 3729(b)(4).

[33] *Thayer v. Planned Parenthood of the Heartland, Inc.*, 11 F.4th 934, 938 (8th Cir. 2021).

claim "despite its actual knowledge that certain requirements were violated"; and (3) whether the "noncompliance is minor or insubstantial" or goes to the "'very essence of the bargain.'"[34]

Relator asserts that Defendant claimed it would produce "space qualified" optical encoders to NASA, the Department of Defense, and other government contractors.[35] He argues this claim fraudulently induced these governmental agencies to enter into contracts. Relator contends these claims were false because no testing had been adequately performed on the encoders to make them "space qualified", or see if the production of the advertised optical encoders was possible. He asserts that absent this claim, the governmental agencies and contractors would not have entered into the contracts.

Counts I and II do not plausibly allege that any alleged false statements were material. Counts I and II do not allege that the government made "space qualified" an express condition of payment. Relator asserts that "[c]ommon logic and Relator's own personal knowledge of this industry" support the allegation that the optical encoders being "space qualified" was a contractual requirement. However, the Complaint cites no specific contract provision or regulation that required Defendant to produce space qualified optical encoders. As Defendant points out, Relator admits that he "cannot name [a] specific contract or contract number."[36] Additionally, Relator's definition of "space qualified" used in the Complaint is not alleged to be a term included in any specific contract. Finally, the Complaint does not allege that the government typically rejects contracts based on whether encoders are "space qualified" or not.

The factors weigh against finding the allegedly false advertisements were material to the Government's payment decisions. Relator's arguments to the contrary are unpersuasive.

---

[34]*Escobar*, 579 U.S. at 193 n.5, 194–95.

[35]Doc. No. 1.

[36]Doc. No. 34, p. 5.

Further, the allegations in Counts I and II that contend that the government would have denied payment had it known that the Defendant's optical encoder was not "space qualified" are insufficient under Rule 9(b)'s heightened pleading standards. Post-*Escobar*, several courts have rejected as insufficient general statements that "but for" a defendant's fraud, the government would not have made a payment.[37]

Counts I and II fail to allege the requisite materiality and, to the extent they do, the allegations are without the required particularity to survive a motion to dismiss. Counts I and II are dismissed without prejudice.[38]

### B. Count III

Plaintiff's final cause of action is for retaliatory relief under 31 U.S.C. § 3730(h), which provides:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.[39]

---

[37] See, e.g., *United States ex rel. Watt v. VirtuOx, Inc.*, No. 19-cv-61084, 2021 WL 3883944, at *6 (S.D. Fla. Aug. 31, 2021) ("conclusory and unsubstantiated insistence" that defendant's compliance with a regulatory requirement was material to Medicare payment "is not enough"); *United States ex rel. Lampkin v. Pioneer Educ.*, No. 16-cv-1817, 2020 WL 4382275, at 4-5 (D.N.J. July 31, 2020) (conclusory allegation that false statements "caused the Department of Education to pay claims under Title IV HEA Programs that it would not have paid but for Defendants' fraud" insufficient).

[38] I note that Defendants have raised several other arguments that the Complaint is defective and should be dismissed. For example, Defendant argues the Complaint fails to allege sufficient representative examples of false claims, or that it knowingly submitted false claims. While these arguments appear to have merit, because the above rulings are dispositive, I need not address them. However, if Relator files an appropriate motion for leave to file an amended complaint, he should address all Defendant's arguments or the proposed amended complaint will likely be deemed futile.

[39] 31 U.S.C. § 3730(h).

To prove retaliation under Section 3730(h), a plaintiff must prove "(1) the plaintiff was engaged in conduct protected by the FCA; (2) the plaintiff's employer knew that the plaintiff engaged in the protected activity; (3) the employer retaliated against the plaintiff; and (4) the retaliation was motivated solely by the plaintiff's protected activity."[40]  For an employee's conduct to be construed as "protected activity," the activity must be in furtherance of an FCA action and "aimed at matters which are calculated, or reasonably could lead, to a viable FCA action."[41]  This second condition has been explained by the Eighth Circuit to mean that "[a]n employee engages in protected activity where (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government."[42]  The plaintiff is not required to have filed an FCA action at the time of the alleged retaliation.[43]

In the Complaint, Relator alleges he alerted Defendant that its failure to properly test the optical encoder prior to contracting for its production constituted fraud, as well as stating his concern regarding improper billing.  Defendant placed him on a Last Chance Agreement because of his communication style, which he contends had not been a problem for the previous twenty-one years of his employment, and soon thereafter, Defendant terminated him.  Relator argues the real reason for his termination was his complaints about the development, contracting, and production of the optical encoders.

---

[40]*Schuhardt v. Washington Univ.*, 390 F.3d 563, 566 (8th Cir. 2004).

[41]*Id.* at 567.

[42]*Wilkins v. St. Louis Hous. Auth.*, 314 F.3d 927, 932-33 (8th Cir. 2002).

[43]*Id.* (citing *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 236 (1st Cir. 2004)).

At this stage, accepting the allegations in the Complaint as true, Relator has stated a claim for retaliation under Section 3730(h).

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (Doc No. 28) is GRANTED IN PART and DENIED IN PART. Counts I and II are dismissed without prejudice. Count III remains.

IT IS SO ORDERED this 22nd day of September, 2023.

                                      BILLY ROY WILSON  
                                 _____  
                                 UNITED STATES DISTRICT JUDGE