IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION


UNITED STATES OF AMERICA                                      PLAINTIFFS
*ex rel.* STEVEN STEPANISHEN, and
STEVEN STEPANISHEN, Individually

V.                              NO. 4:20-cv-414-BRW


BEI PRECISION SYSTEMS & SPACE
COMPANY, INC.                                                DEFENDANT

## DECLARATION OF STEVEN PARKER

I, Steven Parker, state the following under oath:

1.      I am over 18 years of age and competent to make this declaration.

2.      In 2019 and 2020, I was the Sr. Director—Performance Excellence at

BEI Precision.  In that role, I served as Steven Stepanishen's direct supervisor.

3.      Stepanishen worked at BEI Precision as a reliability engineering

manager, a job in which Stepanishen's primary duties were quality and contract

assurance, which required him generally to ensure that products met contract

specifications and to investigate when products did not meet specifications.

4.      In the fall of 2019, Stepanishen's performance began to suffer in two

key ways.  First, Stepanishen had unprofessional interactions with both fellow

employees and customers.  Second, Stepanishen frequently failed to meet

performance expectations.

EXHIBIT 2

5.      With regard to Stepanishen's unprofessional interactions, it was reported to me that he had heated confrontations with his co-workers.  One confrontation was with a co-worker named Rex.  Another confrontation occurred when Stepanishen locked his keys in his car and took exception to a co-worker named Carmen joking about it.

6.      On October 30, 2019, I emailed Stepanishen and asked him "to stop alienating the team and be part of the solution."  Ex. A.  I told him that his "extended emails with everyone on blast" harmed relationships with other employees and made resolving issues difficult.  *Id*.

7.      Stepanishen's unprofessional behavior culminated in a lunch meeting with a customer on December 17, 2019, in which he became angry, banged on a desk, and carried on angrily for several minutes.  After the meeting, Stepanishen argued with a colleague.

8.      With regard to Stepanishen's unsatisfactory performance, other employees complained that he failed to perform his duties and put them in position to have to perform them for him.  He frequently failed to perform the reliability engineer's function as the chair of failure review boards investigating issues with products.  His poor performance in presenting reports to Raytheon, a customer of BEI, led to that customer requesting that he no longer present to them.

9.      At other times, Stepanishen missed issues with products in his reviews and failed to properly review documentation for products.

10.     He also showed up late to meetings, was unprepared when he showed up to meetings, and spent most meetings looking at his phone rather than paying attention to what was being said.

11.     After the December 17, 2019, lunch meeting incident, I discussed these issues with Stepanishen and made clear to him that improvement was required to maintain employment at BEI.  At that time, Stepanishen signed a Last Chance Agreement as a condition for eligibility for continued employment at BEI.  Ex. B.

12.     Under the Last Chance Agreement, Stepanishen agreed as a condition of continued employment (1) "to refrain from any disruptive behavior and [to] act in a professional manner at all times"; (2) "to follow direction from Program Management on all customer interactions"; (3) "to abide by all company rules and regulations"; and (4) "to keep personal issues from affecting the workplace and his productivity."  Ex. B.

13.     Stepanishen agreed in the Last Chance Agreement that any violation of those four conditions would be "grounds for immediate termination" for a period of two years.  Ex. B.

14.     Stepanishen did not comply with the conditions for continued employment set out in the Last Chance Agreement.  On March 5, 2020, Wilf Schultheis, Director–Operations for BEI, reported that Stepanishen had behaved inappropriately in a meeting held the previous day.  Stepanishen had used the meeting to complain "that his boss was already mad at him for not completing some documentation" and "that his boss had given him a bad appraisal."  Ex. C.

3

Schultheis explained that the meeting was not the appropriate forum to discuss such issues. *Id*.

15.     Because the information provided by Schultheis showed a violation of the Last Chance Agreement, I decided to terminate Stepanishen's employment on March 5, 2020.  That day, Lori Edwards (a Human Resources Generalist for BEI) and I met with Stepanishen and informed him that his employment had been terminated.  Later that day, Edwards sent Stepanishen a letter confirming the termination.

16.     Stepanishen's employment was terminated solely because he violated the conditions of the Last Chance Agreement requiring him to refrain from disruptive behavior and to act professionally at all times.  Based on my understanding of what happened at the March 4, 2020, meeting as recounted by Schultheis, Stepanishen had failed to act professionally and had disrupted the meeting with his unprofessional behavior.

17.     Stepanishen was not terminated based on issues that he raised regarding optical encoders.  When Stepanishen raised concerns about optical encoders to me, I understood him to be raising them in his role as a reliability engineer for BEI, which required him to examine product failures and find their cause.  Stepanishen did not tell me that he had any intent to report the issue to the government or to assist the government in pursuing any action based under the False Claims Act.

4

18.     I declare under penalty of perjury that the foregoing is true and

correct.

Executed on March 25, 2024.

                              */s/ Steven Parker*
                              Steven Parker

5

## Lori Edwards

| | |
|---|---|
| **From:** | Steven Parker |
| **Sent:** | Tuesday, December 17, 2019 14:40 |
| **To:** | Lori Edwards |
| **Subject:** | FW: Marktech source inspection |

**From:** Steven Parker
**Sent: Wednesday, October 30, 2019 12:37 PM**
**To:** Steve Stepanishen <sstepanishen@BEIPRECISION.com>
**Subject:** RE: Marktech source inspection

Steve,

I've made it clear to Heath that you (and only you) are Reliability unless I say otherwise, but you have to stop alienating the team and be part of the solution. The extended emails with everyone on blast, and sensationalizing an already high-visibility / high priority situation don't help.

I've told Andy, Matt, and Heath to include you in the meetings for MarkTech going forward. They will call you, or email you in anticipation of the typically unscheduled meetings (primarily due to MarkTech constraints).

This issue is going on 3 weeks now, and this is the first I've seen anything from you on it. I saw in Andy's emails that you were included previously, so I can only assume that it was a misunderstanding between you and Heath on who was doing what, and the use of an MRR vs. an MA. BEI needs all hands on deck, and if you're the one that is supposed to direct that, then I'd assume that's happening in the daily stand-ups.

I want you to be part of the solution in a constructive way. We need this issue resolved ASAP AND we need it done correctly. I understand conflicts of interests, so I'm relying on you to make sure we're adequately responding to these issues from a reliability perspective.

In regards to our supplier approval process...

Per the NASA audit, we haven't done a supplier on-site audit in 5 years. Quality has been approving our vendors. I think we have a systemic problem in that I can't find where we define what a "special process" is. That would be a good place to start with long term corrective actions for the QMS. The immediate containment action for the materials will have multiple paths, so that we have the best chance of something succeeding and meeting customer requirements.

Let me know if you want to discuss more in person.

Best regards,

Steven

Steven Parker, LSSBB
Sr. Director - Performance Excellence

1



BEI 000037



1100 Murphy Drive
Maumelle, AR 72113
Office: (501) 851-5402
Cell:    (501) 271-8199
Steven.Parker@beiprecision.com
www.beiprecision.com

**From:** Steve Stepanishen <sstepanishen@BEIPRECISION.com>
**Sent:** Wednesday, October 30, 2019 10:18 AM
**To:** Steven Parker <steven.parker@BEIPRECISION.com>
**Subject:** RE: Marktech source inspection

Steven,

A little more information.  Per the Reliability work instruction RE-WI-0003:

3.0   **RESPONSIBILITY**

3.1   Unless otherwise specified by contract, Reliability Engineering must assess and troubleshoot
       reported events, failures, malfunctions and nonconformances which occur during Acceptance,
       Proto-qualification, or Qualification testing and initiate/open Malfunction Analysis (MA) reports
       when equipment/hardware malfunctions are suspected and determine the root cause and
       corrective action necessary to prevent reoccurrence.

I don't think that is in question but Reliability is in control of malfunctions that occur during Qualification:

6.8   The Reliability Engineer will direct the troubleshooting process, per the plan as applicab
       isolate the cause of the malfunction.  Actions associated with the investigation and troub
       will be documented in the MA. Any relevant allowable troubleshooting actions performed
       addition to the troubleshooting plan will also be documented in the Malfunction Report.

Farming out root cause investigations is not determined by engineering or Program management.

Corrective actions are determined by Reliability:

2

BEI 000038

6.12    The Reliability Engineer will determine if a Phase 2 Corrective Action Order or Prevent[...]
        is necessary and will initiate a Corrective Action Order in accordance with the Correctiv[...]
        procedure and/or a Preventative Action as required.  The Corrective Action Order or Pr[...]
        Action Order number will be entered in the Phase 1 Corrective Action section of the Ma[...]
        Report.

6.13    If component level testing or analysis is required to further determine the cause and/or[...]
        failure, the Reliability Engineer will prepare and process the necessary Scope of Work[...]
        purchase requisition for the tasks to be performed.  The results of the component failur[...]
        will form a part of the Malfunction Report.

Per the  Quality Assurance Work Instruction for Control of Suppliers, Quality and Reliability have the responsibility of Supplier audits- not engineering or Program Management.

5.2.6    Component and End Item Test Facilities

Although component screening, DPA, Radiation, Failure Analysis, etc and end item test, Inspection, and examinations do not purely meet the normal definition of a special process, BEI Precision Systems & Space Company Quality Assurance requires this type facility be formally approved prior to use.

On-Site facility surveys performed by Quality or Reliability Assurance is the only method allowed for approval of facilities performing testing on End Item Product.  The survey will consist of the assessments/verifications listed in paragraph 5.1.5 herein as a minimum.

Candidate facilities for component level screening, DPA, Radiation, Failure Analysis, etc will be required to complete and submit a BEI Quality Assurance Survey Questionnaire form. This documentation will be reviewed by BEI Quality Assurance Director or his/her assigned designee for the adequacy of the facilities Quality Management System.

Candidate component level testing facilities may be approved by one of the following methods:

- Performance of an on-site facility survey performed by Quality or Reliability Assurance.  The survey will consist to the assessments/verifications listed in paragraph 5.1.5 herein as a minimum

- Independent 3rd party Defense Supply Command Center Columbus (DSCC) approved status.  The facility will be required to provide a copy of their current DSCC Certification for review and confirmation by BEI Quality Assurance Director (or his/her assigned designee).  No other activities will be required.  If this method is used for approval the facility will be required to provide BEI any future approvals or decertification status.

So our QMS requires compliance by Quality or Reliability- not engineering.  These work instructions have not changed these responsibilities yet other departments are not following them for some reason.  I spoke to Jim Dyer about the Marktech visit and he simply said he was asked if Brozak could go and he said yes.  But  he isn't in Quality or Reliability so technically he is not supposed to be conducting a root cause investigation OR a supplier survey.

Steve

**From:** Steve Stepanishen
**Sent:** Wednesday, October 30, 2019 9:00 AM
**To:** Steven Parker <steven.parker@BEIPRECISION.com>
**Subject:** Marktech source inspection

So after we talked this morning, I went to the morning meeting and asked about the Marktech LEDs and Heath and Andy said they were sending Brozak to Japan next week to look at their manufacturing facility. This is a critical part of the

BEI 000039

failure investigation which I am leading.  How does the decision get made to send someone from engineering with no failure analysis experience to do the inspection normally handled by reliability who deals exclusively in failure analysis? ? This is how we get ourselves in a bind.  It is a critical visit and Ive already had to explain to Brozak why his dew point calculations would not be adequate to approve the LEDs.  Engineering was going to send these calculations to the customer to get them to approve the use as is disposition on the LEDs.  And the questions being asked of Marktech by engineering are not giving me any confidence.

Did you know about the proposed trip?

Steve

BEI 000040



## LAST CHANCE AGREEMENT

This agreement is made and entered into by and between BEI Precision Systems & Space Company, Inc., hereafter referred to as the "Company", and Steven Stepanishen.

This agreement was made on December 19, 2019, as a condition of Steven Stepanishen "eligibility for continued employment." The parties to this agreement hereby agree to the following, as outlined below:

1.  Steven Stepanishen agrees, as a condition of his continued employment, to refrain from any disruptive behavior and act in a professional manner at all times.

2.  Steven Stepanishen agrees, as a condition of his continued employment, to follow direction from Program Management on all customer interactions.

3.  Steven Stepanishen agrees, as a condition of his continued employment, to abide by all company rules and regulations.

4.  Steven Stepanishen agrees, as a condition of his continued employment, to keep personal issues from affecting the workplace and his productivity.

5.  Steven Stepanishen, having indicated his current stress levels are high, is strongly encouraged to utilize either his medical provider or the company sponsored Employee Assistance Program (EAP) to get counseling. The twenty-four hour number is 1-800-227-1060. Company Code: BEI-PSSC.

6.  Steven Stepanishen agrees that any violation of paragraph one, two, three or four is grounds for immediate termination. This agreement is enforceable for a period of two years; thereafter, Steven Stepanishen will follow all company rules and regulations as any other employee is expected to.

Executed this 19th day of, December 2019.

Steven Stepanishen
Employee

Steven Parker
Sr. Director – Performance Excellence

Lori Edwards
Human Resources Generalist

**EXHIBIT**
**B**

\* *Note   Steven Stepanishen has been diagnosed with Anxiety and This is a defined medical condition under the ADA. As such we will need to discuss The reasonable accomodations necessary to ensure continued productivity since The added workload has increased That anxiety. This has been disclosed To my management.*

BEI 000015

## Lori Edwards

| | |
|---|---|
| **From:** | Wilf Schultheis |
| **Sent:** | Thursday, March 5, 2020 10:58 |
| **To:** | Lori Edwards |
| **Subject:** | RE: 8am Space Meeting on 3/4/2020 |

Near the conclusion of the 8:00 A.M. meeting 3/4/2020 testing of the new LEDs from Marktech was brought up. Steve Stepanishen rightfully pointed out that the LED's that came in two lots had not been approved for use, and the suggested that qualification for both lots may be needed. For whatever reason Steve Stepanishen made a statement to the effect that his boss was already mad at him for not completing some documentation (MA) related to the LED. Andy Chouinard pointed out that Steve Stepanishen had not responded to a request by email from two weeks prior related to the LEDs. Steve then stated that his boss had given him a bad appraisal. I then stated that if he had a problem with his boss, he should take it up with him, and that the meeting was not the forum to discuss it.  I pointed out that any issues with his boss were not relevant to the discussion, and I had no interest in him bringing his issues into the meeting with a large group of people.

Wilf Schultheis
Director - Operations



1100 Murphy Drive
Maumelle, AR 72113
Office:  (501) 851-5468
Cell:     (501) 428-2156
wschultheis@beiprecision.com
http://www.beiprecision.com

**From:** Lori Edwards <lori.edwards@BEIPRECISION.com>
**Sent:** Thursday, March 5, 2020 09:11 AM
**To:** Wilf Schultheis <wschultheis@BEIPRECISION.com>
**Subject:** 8am Space Meeting on 3/4/2020

Wilf,

When you get a moment, would you please outline what happened during the meeting yesterday.

Thanks!

Lori Edwards
Human Resources Generalist



1100 Murphy Drive
Maumelle, AR 72113

1



EXHIBIT
C

BEI 000029

Office:  (501) 851-5608
Fax:     (501) 851-5469
lori.edwards@beiprecision.com
www.beiprecision.com

BEI 000030