**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA *ex rel.* Steven Stepanishen, and STEVEN STEPANISHEN, individually,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**BEI PRECISION SYSTEMS & SPACE COMPANY, INC.,**<br><br>**Defendant.** | **Civil Action No. 4:20-cv-414-BRW** |

## <u>RESPONSE TO MOTION FOR SUMMARY JUDGMENT</u>

### I.       INTRODUCTION

Defendant's Motion for Summary Judgment (ECF No. 47) must be denied because Relator Steven Stepanishen ("Stepanishen") has presented a genuine question of material fact for every issue raised by Defendant. More specifically, Stepanishen has provided evidence establishing a prima facie case of retaliation because Defendant took the adverse action of terminating his employment immediately following Stepanishen's protected conduct of threatening to report Defendant's fraud to a government agency. Moreover, the wealth of evidence demonstrating a pattern of adverse actions leading up to Stepanishen's employment termination shows Defendant's stated motivation for his termination was mere pretext. Defendant terminated Stepanishen to prevent him from reporting Defendant's fraud to the United States government.

**Page 1 of 23**
***U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.***
**U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW**
**Response to Motion for Summary Judgment**

## II.     STATEMENT OF FACTS

Defendant employed Stepanishen as a reliability engineer from 1998 until it terminated his employment on March 5, 2020. Decl. of Steven Stepanishen ("Decl. Stepanishen") ¶ 3, attached as Ex. A. He was employed as the manager of the reliability department for at least the last five years of his employment. *Id*. In the first 21 years that Stepanishen worked for Defendant as a reliability engineer, he only ever received good performance reviews and commendations. *Id*. at ¶ 5. Until the fall of 2019, Stepanishen was never disciplined for his workplace behavior and never received a negative performance review. *Id*. In the summer of 2018, Defendant reduced its reliability department from five engineers to one. *Id*. at ¶ 6. From 2018 until his termination, Stepanishen was Defendant's sole reliability engineer. *Id*. Despite the reduction in workforce and the increased demands on Stepanishen's time and attention, he never received a poor work performance evaluation, nor did Defendant receive any complaints from Stepanishen's co-workers or its customers concerning Stepanishen's ability to complete his assigned tasks. *Id*.

In the late summer or early fall of 2019, Stepanishen began working on failure analyses for multiple different government contracts for Defendant's newest line of optical encoders, which was part of Defendant's new NanoSeries line of encoders. *Id*. at ¶ 8. The encoders failed spectacularly, and in ways that raised red flags for Stepanishen. *Id*. at ¶ 14. The only explanation for the failures was that the design as a whole was flawed. *Id*. According to industry practice and Defendant's usual practice, an engineering department is required to build a prototype model of the product in order to debug the design and ensure the model works according to the contract standards before entering purchasing

**Page 2 of 23**
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
**U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW**
**Response to Motion for Summary Judgment**

contracts with customers. *Id*. at ¶ 12. If this testing process is not completed, the design

of the product cannot be considered mature, or finalized, nor can Defendant guarantee

that the product will survive or work as it is supposed to when the product is installed on

a satellite in outer space. *Id*. at ¶ 9–12. When Stepanishen raised his concerns with the

engineering department, he was told that no prototype had been funded by Defendant,

despite multiple requests. *Id*. at ¶ 14–16.

Having read the contracts and requirements for these new NanoSeries encoder

programs, Stepanishen understood that Defendant's customers, which included NASA,

the United States Space Force, and other government subcontractors, had contracted for

low-risk, mature and finalized designs. Stepanishen realized that contracting to sell a

product that had not undergone the rigorous testing required by the industry without

disclosing that material fact could constitute fraud.[1] *Id*. at ¶ 17. Stepanishen raised these

concerns with Steven Parker ("Parker"), his direct supervisor, in October of 2019. *Id*. at ¶

18. Parker told Stepanishen he would look into the issue. *Id*.

Immediately following this meeting with Parker, Stepanishen's workplace culture

turned hostile. *Id*. at ¶ 19. Prior to this, Stepanishen always got along with his co-workers

and paid particular attention to his interpersonal relationships at work because he knew

that his voice often caused him to seem intimidating or angry. *Id*. at ¶ 20. Before October

of 2019, Stepanishen never received a complaint of unprofessionalism or disruptive

behavior from a co-worker or any of Defendant's customers with whom he worked closely.

*Id*. at ¶ 21. After his meeting with Parker, Stepanishen began to receive discipline and

---

[1]    Stepanishen is a licensed, but non-practicing attorney. Dep. of Steven Stepanishen ("Dep. Stepanishen") 5:20–6:23, attached as Ex. B. Stepanishen practiced primarily in patent and copyright law, and recognized that failure to include a material fact in Defendant's contract is fraud. *Id*.

Page 3 of 23
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW
Response to Motion for Summary Judgment

reprimands for unprofessional behavior for actions that had never been issues prior to the meeting. *Id*. at ¶ 23.

Specifically, Stepanishen was accused by a Program Manager of failing to finalize a report on time in a manner that was calculated to paint Stepanishen negatively. *Id*. at ¶ 24. The report was not delinquent, and in fact was timely completed, which the program manager should have recognized because he was a former reliability engineer himself. *Id.* Yet Stepanishen was still rebuked for failing to complete his reports on time and the rebuke was never lifted. *Id*. Stepanishen was prevented from traveling for work to an important meeting with a major government contractor customer over an incident in which he followed explicit advice from co-workers and supervisor, but was still left to blame for others' miscommunications. *Id*. at ¶ 26. Stepanishen was never cleared of the misunderstanding. Id. In fact, after pulling Stepanishen from the trip, Parker insisted on the unnecessary indignity that Stepanishen merely listen to the meeting via conference call without speaking or announcing his presence to the meeting participants. *Id*. *See also* Dep. Stepanishen 135:20–136:3. Stepanishen was accused of unprofessional and disruptive behavior at several meetings, one of which led to Parker insisting that he sign a Last Chance Agreement, and one of which Parker insisted violated his Last Chance Agreement and resulted in Stepanishen's termination. *Id*. at ¶ 27–31, 44–45. Both of these accounts of unprofessionalism are verifiably false. *See* Letter from Ray Reed, attached as Ex. D; Decl. of Wilf Schultheis, attached as Ex. C. In one of these meetings, a program manager cursed at Stepanishen but was never rebuked for this unprofessional behavior. Decl. Stepanishen ¶ 28–29.

**Page 4 of 23**
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
**U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW**
**Response to Motion for Summary Judgment**

Stepanishen was summoned by Parker and Lori Edwards, a human resources representative, following this meeting and accused of unprofessionalism. *Id.* at ¶ 29. Edwards claimed to have thoroughly investigated the incident, but Stepanishen was not permitted to defend himself, provide his version of events, or to call another witness to give a more accurate account. *Id.* at ¶ 29–30. Stepanishen requested specifics regarding what improper behaviors he was accused of or what conduct was objectionable, but nobody provided him with an answer. *Id.* at ¶ 29, 31. Stepanishen even requested Parker provide him with sensitivity training so that he could manage his workplace relationships in a way that would not receive such criticism; these requests for training were refused. *Id*. at ¶ 25, 31.

Stepanishen was targeted in other areas. Before his report concerning fraud, the heads of the departments managed their demands on Stepanishen's time in a reasonable and orderly fashion by cooperating with each other in setting priority demands on Stepanishen's time and attention. Following his report, the workload grew exponentially, culminating with three program managers (including the department head who cursed at Stepanishen during the meeting) simultaneously demanding Stepanishen's immediate attention to tasks associated with their programs without regard to the other department's concurrent demands. *Id*. at ¶ 33. When Stepanishen was unable to meet this unrealistic expectation, he received a poor performance evaluation in which he was accused of struggling to prioritize his workflow. *Id*. At one point, Stepanishen was instructed to bill his time on one project to the funding on another project, which is considered timecard fraud and is a fireable offense. *Id*. at ¶ 35. He was instructed to commit this fireable offense by

**Page 5 of 23**
***U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.***
**U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW**
**Response to Motion for Summary Judgment**

the same program manager who cursed at him and refused to prioritize his demands on Stepanishen's time. *Id*.

Finally, in February of 2020, Stepanishen again raised fraud concerns with Parker regarding the NanoSeries encoders' failures. *Id*. at ¶ 40–41. During this meeting, Stepanishen accused Defendant of committing fraud and for the first time stated that he intended to include those allegations in the failure analyses he was preparing for Defendant's customers, which included NASA, the United States Space Force, and other government subcontractors. *Id*. at ¶ 41. Very shortly after this meeting, in which Stepanishen informed Parker he believed the Defendant committed fraud and that his report would disclose Defendant's fraud to the United States government, Stepanishen was fired due to fabricated accusations of unprofessionalism. *Id*. at ¶ 44; *see also* Decl. Schultheis ¶ 7–8 (stating that although Schultheis admonished Stepanishen for discussing Parker's discontent with Stepanishen's performance in an inappropriate forum, he did not report Stepanishen for unprofessional behavior and only provided an account of the interaction after Parker approached him about it).

## III.    STANDARD OF REVIEW

Summary judgment is proper only "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996) (citing Fed. R. Civ. P. 56(c)).  "The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Id*.  Genuine issues of material fact exist when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Eastman v. United States*, No. 06-CV-1069, 2009 U.S. Dist. LEXIS 73415, at *4

Page 6 of 23
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW
Response to Motion for Summary Judgment

(W.D. Ark. Aug. 19, 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, (1986)).

In deciding whether there is sufficient evidence favoring the nonmoving party, "the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party." *Id.* (citing *Nitsche v. CEO of Osage Valley Elec. Co-Op.*, 446 F.3d 841 (8th Cir. 2006)). Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from facts are jury functions, not those of a judge. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Anderson*, 477 U.S. at 255).

## IV.    ARGUMENT

The timeline presented in Section II above clearly shows that Defendant fired Stepanishen because of his imminent report to NASA and other government agencies regarding the design failures inherent in Defendant's NanoSeries optical encoders. Immediately following Stepanishen's first report of fraud, Defendant began a coordinated effort to create a manufactured "legitimate" reason to fire Stepanishen by suddenly developing concerns over his professionalism after 20 years of exemplary employment. This effort culminated in Defendant's terminating Stepanishen's employment mere weeks after Stepanishen explicitly informed Defendant that he planned to include fraud allegations in his report to the government. Stepanishen has clearly presented a prima facie case of retaliation, and that same evidence serves as proof that Defendant's stated reasons for Stepanishen's termination are pretextual.

**Page 7 of 23**
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
**U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW**
**Response to Motion for Summary Judgment**

**A.      Legal Standard: FCA Retaliation**

When an employee lacks direct evidence of retaliation, courts use the *McDonnell Douglas* burden-shifting framework to analyze the viability of the claim. *Sherman v. Berkadia Commer. Mortg. LLC*, 956 F.3d 526, 532 (8th Cir. 2020). The first step in the framework requires the employee to establish a prima facie case. *Id*. (*citing United States ex rel. Strubbe v. Crawford Cty. Mem'l Hosp.*, 915 F.3d 1158, 1168 (8th Cir. 2019)). To establish a prima facie case, the employee must show (1) that he engaged in a protected activity; (2) that his employer knew that he engaged in that protected activity; (3) that his employer retaliated against him; and (4) that the retaliation was motivated solely by the protected activity. *Id*. (quoting *Strubbe*, 915 F.3d at 1168). "The motivated solely by causal link required as part of a prima facie case of a FCA retaliation claim is tighter than that required in other types of retaliation discrimination claims where [courts] use the same *McDonnell Douglas* framework." *Id*.

Once the employee establishes his case, the burden shifts to the employer to "articulate a legitimate reason for the adverse action." *Id*. (quoting *Strubbe*, 915 F.3d at 1168). Then, the burden shifts back the employee to demonstrate "that the reason offered was mere pretext and that, in fact, retaliatory animus motivated the action." *Id*. (citing *Strubbe*, 915 F.3d at 1168).

**B.      Stepanishen has established a prima facie case of retaliation.**

By both misconstruing Stepanishen's deposition testimony and decontextualizing relevant case law, Defendant claims that Stepanishen cannot establish a prima facie case because 1) his report regarding fraud was not protected conduct; 2) Defendant did not know that he planned to report fraud to the government; and 3) he cannot show that

**Page 8 of 23**
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
**U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW**
**Response to Motion for Summary Judgment**

Defendant's termination of his employment was motivated solely by the protected activity. A closer review of the facts shows that Stepanishen's conduct was protected, that Defendant understood it to be protected, and that Defendant responded by manufacturing a reason to fire Stepanishen.

      *1.    Stepanishen's report regarding fraud was protected conduct.*

The crux of Defendant's argument regarding whether Stepanishen's reports of fraud were protected conduct is that Stepanishen made these reports exclusively in the furtherance of his job duties and not with any sort of intent to report the fraud to the government. This argument misses the mark. Although it cites to case law that states the opposite, Defendant's argument is premised on the incorrect assumption that an employee must be contemplating an FCA claim at the time he raises concerns. "Protected activity is established when the employee's actions satisfy two conditions: (1) the employee's conduct must have been in furtherance of an FCA action; and (2) the employee's conduct must be aimed at matters which are calculated, or reasonably could lead, to a viable FCA action." *United States ex rel. Ray v. Am. Fuel Cell & Coated Fabrics Co.*, No. 1:09-CV-01016, 2015 U.S. Dist. LEXIS 24803, at *14 (W.D. Ark. Mar. 2, 2015) (citing *Schuhardt v. Wash. Univ.*, 390 F.3d 563, 567 (8th Cir. 2004)). Notably, "[t]he protected activity element of a retaliation claim does not require the plaintiff to have filed an FCA lawsuit or to have developed a winning claim at the time of the alleged retaliation." *Schuhardt*, 390 F.3d at 567 (quoting *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 236 (1st Cir. 2004)).

Stepanishen's first report of fraud in the fall of 2019 was arguably merely in furtherance of his job duties—in performing his duties as a reliability engineer,

**Page 9 of 23**
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
**U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW**
**Response to Motion for Summary Judgment**

Stepanishen noticed some anomalies regarding the design flaws in Defendant's NanoSeries encoders and brought his concerns to his supervisor, Steven Parker, simply to draw upper management attention to the issue. Dep. Stepanishen 85:4–10; Decl. Stepanishen ¶ 18. In February of 2020, however, Stepanishen again approached Steven Parker regarding his concerns with the NanoSeries encoders, and this time explicitly stated that he believed Defendant had committed fraud and that he planned to include that fact in his failure report that would be provided to the customer. Dep. Stepanishen 61:18–62:17, 80:1–8; Decl. Stepanishen ¶ 40–42. Notably, the customer was NASA, a government agency. Dep. Stepanishen 25:3–26:7; Decl. Stepanishen ¶ 13.

Stepanishen was clearly "lawfully try[ing] to stop one or more violations of the Act," even though the conduct was not advancing an FCA lawsuit at the time. The report was calculated to stop Defendant from defrauding the government by following through on a sale of a good that had not been tested or built to contractual specifications. Decl. Stepanishen ¶ 17. Moreover, Stepanishen's belief that Defendant was committing fraud was reasonable—Defendant's production of the NanoSeries encoders without first preparing a working prototype went against both Defendant's prior procedures and industry practice. Dep. Stepanishen 26:8–27:11, 79:3–10; Decl. Stepanishen ¶ 12. *See also Wilkins v. St. Louis Hous. Auth.*, 314 F.3d 927, 933 (8th Cir. 2002) ("[T]here is sufficient evidence in this case of Wilkins's belief that SLHA, like the Civil-War contractors, was, in essence, shipping crates full of sawdust (*i.e.*, unsafe public housing) for which the government had paid full price (*i.e.*, an annual contract contribution for a housing environment that was safe). . . . [F]raudulently concealing 'defective goods' is also a false

**Page 10 of 23**
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
**U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW**
**Response to Motion for Summary Judgment**

'claim' for payment within the purview of the FCA, and Wilkins reasonably believed he was acting to prevent, or at least report, such concealment.").

Stepanishen's fraud report was not "merely grumbling" to his employer as Defendant claims. Br. in Supp. of Mot. for Summ. J., ECF No. 48, p. 10. Stepanishen specifically and explicitly stated that "the way it looks to me is we committed fraud," and that he intended to include that fact in his failure report that would be submitted to the customer. Dep. Stepanishen 80:3; Decl. Stepanishen ¶ 40–41. Stepanishen communicated his intent to report what he reasonably believed to be fraud on the government to a government agency; this is definitionally a protected activity. *See Ray*, 2015 U.S. Dist. LEXIS 24803, at *16 ("The focus is whether the internal complaint 'alleges fraud on the government.') (quoting *U.S. ex rel. George v. Boston Scientific Corp*., 864 F. Supp. 2d 597, 606 (S.D. Tex. 2012)).

      2.    *Defendant was aware that Stepanishen's report was protected activity.*

Defendant argues that it was unaware that Stepanishen's fraud report was protected activity because it believed he was "merely grumbling" about Defendant's regulatory practices. Br. in Supp. of Mot. for Summ. J., ECF No. 48, p. 11. In support of this argument, Defendant cites to a string of cases in which the employee failed to allege that the employer's conduct was illegal or inform the employer that he or she intended to inform the government. "Complaints about the employer's behavior generally should include some indication of their legal significance with respect to fraud and the FCA." *Strubbe v. Crawford Cty. Mem'l Hosp.*, No. C15-4034-LTS, 2017 U.S. Dist. LEXIS 220263, at *11–12 (N.D. Iowa Dec. 6, 2017) (citing to the three cases cited by Defendant: *Hutchins v. Wilentz*, 253 F.3d 176, 186-87 (3d Cir. 2001); *McKenzie v. BellSouth Telecomms., Inc.*,

**Page 11 of 23**
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
**U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW**
**Response to Motion for Summary Judgment**

219 F.3d 508, 516 (6th Cir. 2000); *Robertson v. Bell Helicopter Textron*, 32 F.3d 948, 951 (5th Cir. 1994)).

These cases are entirely inapposite because Stepanishen not only alleged that Defendant had defrauded the government, he was preparing a report that he intended to provide to the defrauded government agency. "The key focus is whether the employee alleged fraud on the government." *Strubbe*, 2017 U.S. Dist. LEXIS 220263, at *12 (citing *Ray*, 2015 U.S. Dist. LEXIS 24803, at *16. Defendant compares Stepanishen's report to the employee's report in *Robertson*, which failed because "he never characterized his concerns about the unsubstantiated charges as illegal," but Stepanishen alleged that Defendant had committed fraud, which is illegal. Br. in Supp. of Mot. for Summ. J., p. 11 (citing *Robertson*, 32 F.3d at 951). *But see* Decl. Stepanishen ¶ 40. Defendant cites to *McKenzie* in which the employee's report failed to notify the employer because the report "did not indicate that the dispatcher planned to . . . inform the government of fraudulent action," but Stepanishen told his supervisor that the allegations of fraud would be included in the report he would send to NASA. Br. in Supp. of Mot. for Summ. J., p. 12 (citing *McKenzie*, 219 F.3d at 515). *But see* Decl. Stepanishen ¶ 41. Defendant relies on *Hutchins*, in which the employee's report failed to put the employer on notice "because the employee never threatened to report the practices to a government authority," but Stepanishen threatened to report fraud to the defrauded government agency. Br. in Supp. of Mot. for Summ. J., p. 12 (citing *Hutchins*, 253 F.3d at 193). *But see* Decl. Stepanishen ¶ 40–41.

This case is far more akin to *Schuhardt v. Washington University*, 390 F.3d 563 (8th Cir. 2004). In *Schuhardt*, the Eighth Circuit stated that "an employee's report of illegal

**Page 12 of 23**
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
**U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW**
**Response to Motion for Summary Judgment**

or unlawful activity is sufficient to put an employer on notice that the employee is engaged in protected activity." 390 F.3d at 568 (citing *Robertson*, 32 F.3d at 951; *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220 (1st Cir. 2004); *Moore v. California Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838 (9th Cir. 2002)). The *Schuhardt* employee "told her supervisors that the University's billing practice was 'illegal' and 'fraudulent' and that 'if the [Office of Inspector General] would come in they would frown upon us and they'd pretty much wipe us out.'" *Id*. at 568–69. These allegations made to a supervisor "provide sufficient notice to the [employer] that Schuhardt was engaged in protected activity." *Id*. at 569. Here, Stepanishen's told his supervisor that "the way it looks to me is we committed fraud" and "I'm going to have to tell [NASA] that they bought a product that's never been tested—built or tested before." Dep. Stepanishen 61:18–62:17, 80:1–8. These statements are very clearly and obviously sufficient to inform Defendant that 1) Stepanishen believed its conduct was illegal, and 2) he intended to inform the government of that illegal conduct.

Without fully developing an argument, Defendant alludes to the fact that Stepanishen's report to NASA was insufficient to put Defendant on notice because he prepared the report as part of his job duties. This semi-argument fails to account for Stepanishen's clear statements regarding fraud, but even so, Stepanishen's report on the NanoSeries encoders went beyond the requirements of his job duties. Stepanishen's job was to "review the final design" of Defendant's products by "provid[ing] troubleshooting steps, do[ing] the troubleshooting, find[ing] a root cause, determin[ing] why it happened, provid[ing] instructions as to what needs to be changed and what step in the process we need to go back to, to repeat." Dep. Stepanishen 29:15–30:4. Stepanishen's failure report

**Page 13 of 23**
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW
Response to Motion for Summary Judgment

on the NanoSeries encoders could have simply detailed all the myriad of ways in which the products failed and explained what needed to be corrected; there was no necessity to investigate whether a prototype had been funded or authorized by Defendant, or to include a statement that Defendant had failed to follow industry practices. Dep. Stepanishen 27:6–22, 61:22–24. Stepanishen's investigation of whether a prototype was funded or authorized was not within his job duties and was in furtherance of an investigation into fraud. *See Schuhardt*, 390 F.3d at 567 (holding that the employee's activity of tracking irregularities in billing went beyond her regular job duties of tracking missing billed items).

Stepanishen's statements regarding Defendant's illegal practices and his imminent report to NASA were sufficient to give Defendant notice that he was engaged in a protected activity.

3.    *Stepanishen's termination was motivated solely by his protected activity.*

Because Stepanishen was disciplined for the first time in over twenty years of employment for alleged unprofessional behavior immediately following his first report to Parker and his employment was terminated immediately following his second report to Parker, Stepanishen's employment history is sufficient to create a genuine question of fact with respect to whether his employment termination was motivated solely by his protected activity.

"A temporal connection between the protected conduct and adverse action may be sufficient to establish a prima facie case where the proximity is 'very close.'" *Strubbe*, 915 F.3d at 1169 (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). The length of time between the protected activity and the adverse action is important: as the

**Page 14 of 23**
***U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.***
**U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW**
**Response to Motion for Summary Judgment**

length of time shortens, the likelihood of a causal connection increases. *Smith v. Allen Health Sys.*, 302 F.3d 827, 833 (8th Cir. 2002) (citing *Clark Cty. Sch. Dist.*, 532 U.S. at 273). Even with a close temporal connection, "[a] pattern of adverse actions that occur just after protected activity can supply the extra quantum of evidence to satisfy the causation requirement." *Id.* (citing *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1105–06 (8th Cir. 2000); *Hudson v. Norris*, 227 F.3d 1047, 1051 (8th Cir. 2000)).

The timeline of events in this case serves as evidence of a causal connection between Stepanishen's protected activity and Defendant's adverse action. Stepanishen was employed with Defendant for over twenty years without being disciplined or receiving a negative performance review. Dep. Stepanishen 131:9–17; Decl. Stepanishen ¶ 5. *See also* Decl. of Steven Parker ¶ 4 (noting that Stepanishen's work performance "began to suffer" in fall of 2019). In October of 2019, Stepanishen told Parker that the NanoSeries encoders were not performing to standard because Defendant had not debugged the design according to standard practice. Decl. Stepanishen ¶ 18. Immediately after this first report, Stepanishen began to experience workplace hostility in which he felt targeted and scrutinized in ways he had not experienced in the previous twenty years. *Id*. at ¶ 19–23. Stepanishen was criticized and chastised over routine workplace activities that had never been issues prior. *Id*. at ¶ 23. He was blamed for other employees' failings. *Id*. at ¶ 24. Defendant withheld privileges associated with Stepanishen's position and denied him opportunities that had always been available before his meeting with Parker. *Id*. at ¶ 26.

The hostility culminated with Defendant's exaggeration of Stepanishen's behavior in a meeting, followed by a one-sided investigation that failed to discover that others in the meeting believed Stepanishen had behaved professionally and reasonably. *See*

**Page 15 of 23**
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
**U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW**
**Response to Motion for Summary Judgment**

Letter from Ray Reed. Parker used this exaggerated behavior and sham investigation as an excuse to force Stepanishen into signing the Last Chance Agreement. *Id*. at ¶ 27–30. At this point, the workplace hostility and hyper-scrutiny exacerbated Stepanishen's anxiety to the point that it began affecting his mental health. *Id*. at ¶ 32. Stepanishen made diligent efforts to abide by the Last Chance Agreement and get back into Defendant's good graces, but the targeted campaign against him continued. *Id*. at ¶ 31–32. Stepanishen even requested sensitivity training to assist his professionalism, but this was refused. *Id*. at ¶ 31. In early 2020, Stepanishen was instructed to commit timecard fraud, an offense resulting in immediate termination, by one of his supervisors. *Id*. at ¶ 35. Recognizing that this was a questionable instruction, Stepanishen took the issue up the chain to verify the instructions. *Id*. Stepanishen was careful to document and report the incident in writing because he recognized Defendant's attempts to manufacture a reason to fire him. *Id*.

In February of 2020, Stepanishen again met with Parker regarding his concerns with the NanoSeries encoders. *Id*. at ¶ 40–42. Stepanishen alleged that Defendant had committed fraud and informed Parker that Stepanishen would include those allegations in his report to the government agency customers. *Id*. at ¶ 41. Two weeks later, Stepanishen was fired based on trumped up charges that he was unprofessional during a meeting. *Id*. at ¶ 44; *see also* Decl. Schultheis ¶ 7–8. Stepanishen's behavior in the meeting was neither unprofessional nor disruptive. Decl. Schultheis ¶ 8. Stepanishen was not interviewed following this meeting. Decl. Stepanishen ¶ 45. He was not permitted to explain himself or bring witnesses to contest Defendant's decision. *Id*.  It's worth noting that Parker, who is the individual who decided to fire Stepanishen, was not present in the

Page 16 of 23
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW
Response to Motion for Summary Judgment

meeting in which Stepanishen allegedly behaved unprofessionally enough to warrant firing. *Id*. at ¶ 44–45. Parker based his decision on second-hand accounts of Stepanishen's behavior, accounts which were apparently solicited *after* Parker fired Stepanishen. *See* Decl. Stepanishen ¶ 45 (stating Stepanishen was fired around 7:30 am on March 5); Ex. C to Decl. Parker (email containing report of March 4 meeting timestamped 10:58 am on March 5); Decl. Schultheis ¶ 7–8.

The facts in this case run parallel to those in *Bassett v. City of Minneapolis*, 211 F.3d 1097 (8th Cir. 2000). In *Bassett*, the Eighth Circuit held that the employee had shown a causal connection between her reports of discrimination and the employer's adverse actions when "the [employer] imposed an increasing level of discipline for infractions similar to those of [the employee's] peers who were not similarly disciplined, administered negative performance evaluations, denied her training opportunities and privileges afforded to her peers, and 'papered' a file to support its ultimate recommendation of termination." 211 F.3d at 1106. Likewise, in *Hudson v. Norris*, 227 F.3d 1047 (8th Cir. 2000), the Eighth Circuit found a causal connection when, "Within the four months following [the employee's protected activity], he was ordered to evict a co-habitant from his trailer on the prison grounds, was subjected to two internal affairs investigations, was denied a promotion, and was denied accrued vacation time." The Court particularly noted the significance that, "The large number of adverse actions that occurred hard on the heels of the protected activity in this case, *particularly when juxtaposed with [the employee's] previously strong employment record*, is significant evidence that what happened here was more than just coincidence." *Hudson*, 227 F.3d at 1051 (emphasis added).

**Page 17 of 23**
***U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.***
**U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW**
**Response to Motion for Summary Judgment**

Here, like in *Bassett* and *Hudson*, Stepanishen had never received a negative performance review from or been disciplined by Defendant until the fall of 2019, when he first reported issues with the NanoSeries encoders. Stepanishen experienced disciplinary action for the first time immediately following that first report. The pattern of hostility continued over the next five months, and Stepanishen was fired immediately following his second report on the NanoSeries encoders in which he raised allegations of fraud and threatened to report the fraud to the government. Clearly, Defendant felt threatened when Stepanishen looked too closely at Defendant's manufacture of the encoders. Parker and others began watching Stepanishen to see if his investigation would be a threat while also beginning to manufacture a means of firing him, which culminated in the Last Chance Agreement. *See Bassett*, 211 F.3d at 1106 (noting that the employer "'papered' a file to support" its decision to fire the employee). When Stepanishen refused to drop the investigation, Parker waited until Stepanishen got slightly off-topic in a meeting, something that most employees did regularly but had never been fire for, and used the Last Chance Agreement as a pretextual "legitimate" excuse for firing him. *See* Decl. Stepanishen ¶ 44.

This analysis is equally true with respect to Defendant's argument regarding Stepanishen's "belief" that he was fired for his disability as well as his whistleblowing activities. *See* Br. in Supp. of Mot. for Summ. J., p. 14. Even aside from the irrelevancy of what Stepanishen himself believed to be the basis of his firing at the time, Stepanishen's testimony has consistently been that Defendant did not fire him *because* of his anxiety, but that Defendant used his anxiety as a tool in their campaign to create a pretextual reason to fire him. *See* Dep. Stepanishen 128:7–12 (stating that Stepanishen tried to base

Page 18 of 23
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW
Response to Motion for Summary Judgment

his discrimination claim on his whistleblowing activities), 131:9–132:2 (stating that Stepanishen wanted his discrimination claim to include whistleblowing activities; Decl. Stepanishen ¶ 46.

The temporal proximity of Stepanishen's protected activity and Defendant's adverse action provide sufficient evidence to raise a genuine issue of material fact with respect to whether Defendant was motivated solely by Stepanishen's protected activity when it fired him.

## C.    Defendant's reasons for firing Stepanishen are pretextual.

The timeline of events in Section II and Section III.B.3, *infra*, "does double duty" because "[i]t tends to show a causal link between the protected conduct and the adverse action, and it also tends to show that the justification given by a defendant was pretextual." *Hudson*, 227 F.3d at 1052. Thus, Stepanishen has raised a genuine issue of fact with respect to Defendant's stated motives for terminating his employment. "As regards the pretext inquiry specifically, 'to survive summary judgment, [the plaintiff] must adduce enough admissible evidence to raise genuine doubt as to the legitimacy of a defendant's motive, even if that evidence does not directly contradict or disprove a defendant's articulated reasons for its actions.'" *Sprenger v. S. Fed. Home Loan Bank*, 253 F.3d 1106, 1110 (8th Cir. 2001) (quoting *Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 717 (8th Cir. 2000)). This Court may "infer an improper motive from evidence of the falseness of an employer's proffered justification for an adverse action." *Hudson*, 227 F.3d at 1051 (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *Campbell v. Arkansas Department of Correction*, 155 F.3d 950, 958 (8th Cir. 1998)).

**Page 19 of 23**
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
**U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW**
**Response to Motion for Summary Judgment**

Stepanishen's evidence shows that Defendant's stated reasons for firing Stepanishen were pretextual. Stepanishen was employed by Defendant for over twenty years, but his loud personality and gravelly voice only became "unprofessional" after he raised ethical concerns regarding the NanoSeries encoders. This is particularly notable with respect to the meeting that led to the Last Chance Agreement. One of Stepanishen's supervisors, David Dam, believed that Stepanishen's behavior was unprofessional enough to curse at him and criticize him in front of Stepanishen's co-workers, then report Stepanishen's behavior to Parker. Decl. Stepanishen ¶ 28. This meeting was the justification Parker used to force the Last Chance Agreement on Stepanishen. *Id*. at ¶ 29. Another employee in the meeting, however, specifically noted that Stepanishen's behavior was not extraordinary and did not warrant the level of discipline he received. Letter from Raymond Reed, (stating that he "did not consider [Stepanishen's] behavior as disruptive or unprofessional" and, in his opinion, "the company was unfair in its handling of Steve Stepanishen."). Clearly, Parker and Dam were simply on the lookout for any sort of behavior from Stepanishen that they could label "unprofessional" in order to create a pretextual reason to fire him. Lending more credibility to this conclusion, Stepanishen's accuser following the meeting, David Dam, is the supervisor responsible for instructing Stepanishen to commit timecard fraud, a fireable offense. Decl. Stepanishen ¶ 35.

As further evidence that Defendant had no intent to maintain Stepanishen's employment regardless of his "unprofessionalism," Stepanishen repeatedly requested that Defendant provide him with sensitivity training so that he could adjust his behavior to accommodate Defendant's standards of professionalism that he had suddenly ceased to meet. *Id*. at ¶ 31. Stepanishen wanted to keep his job and attempted to modify his

**Page 20 of 23**
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
**U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW**
**Response to Motion for Summary Judgment**

behavior to please Parker and other upper management but was criticized no matter what he did. *Id.* at ¶ 32. Defendant would never provide a concrete example of which of Stepanishen's behaviors were so objectionable, so Stepanishen requested a training session in which he could learn the way in which Defendant wanted him to behave. *Id.* Stepanishen exerted all of this effort into fixing his employment relationship despite having never before received a complaint about his professionalism from either co-workers or Defendant's customers.

This pattern is borne out through the meeting that resulted in Stepanishen's termination. Stepanishen's behavior in the meeting was not disruptive or unprofessional, but Defendant claimed Stepanishen was terminated solely because a meeting participant, Wilf Schultheis ("Schultheis"), supposedly reported Stepanishen's conduct as being "unprofessional." But Schultheis did not state that Stepanishen had been unprofessional or disruptive, he merely said that Stepanishen made an off-topic statement about Parker's unhappiness with Stepanishen, to which he responded that the meeting it was not the proper forum for that discussion. *See* Decl. Schultheis ¶ 7–8; Ex. C to Decl. Parker. Tellingly, Defendant's account of the incident implies that Schultheis approached Defendant's human resources department to report Stepanishen for unprofessional behavior, but Edwards initiated the contact with Schultheis and requested that he describe what he observed during the meeting. Decl. Schultheis ¶ 7–8. Particularly noteworthy is the fact that Edwards's email that solicited Schultheis's account of the meeting timestamped *after* Stepanishen had already been fired and escorted from the building. Decl. Stepanishen ¶ 45 (Stepanishen was fired at 7:30 am); Ex. C to Decl. Parker (email is timestamped 10:58 am). This documentation that Defendant claims is concrete

**Page 21 of 23**
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
**U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW**
**Response to Motion for Summary Judgment**

evidence that Stepanishen was fired for unprofessionalism was not even received by Parker until after Parker had fired him.

Accordingly, Parker's declaration misrepresents 1) that Schultheis ever made claims of Stepanishen's unprofessionalism, 2) who initiated the report of unprofessionalism that was created, and 3) when the report was made. *See* Decl. Parker. And Parker definitively states that this clearly fabricated report was the basis of Stepanishen's termination. Decl. Parker ¶ 15.

Stepanishen has provided evidence that Defendant's stated reasons for firing him are false and pretextual. Employees who attended the meetings in which Stepanishen allegedly behaved unprofessionally, and upon which Defendant based its decision to terminate his employment, have stated that Stepanishen's behavior at the meetings was not unprofessional and that they believed Defendant treated Stepanishen unfairly. Letter from Ray Reed; Decl. Schultheis ¶ 7–8. Defendant did not accuse Stepanishen of unprofessionalism once in over twenty years of employment, but began a documented campaign of finding any hint of unprofessionalism as soon as Stepanishen raised the alarm with respect to the fraudulent production of NanoSeries encoders. Defendant, through Parker, Dam, and others, denied Stepanishen privileges that he had previously enjoyed, made unreasonable requests and set unrealistic expectations and disciplined him when he could not meet them, denied him reasonable requests for more thorough guidance as to how he could fix the problems these employees kept lodging against him, and cultivated a hostile work environment calculated to exacerbate the manufactured problems. And all of these adverse actions began immediately after Stepanishen raised

Page 22 of 23
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW
Response to Motion for Summary Judgment

the alarm regarding fraud, and culminated in Stepanishen's termination when Stepanishen threatened to report the fraud to the government.

In *Hudson v. Norris*, the Eighth Circuit held that when the employer took adverse actions based on false accounts against a single employee with no disciplinary record immediately after that employee engaged in protected conduct, that employee "has provided sufficient evidence to allow a reasonable jury to infer a causal link between his testimony and the adverse actions of which he complains." 227 F.3d at 1053. Stepanishen did not behave unprofessionally at work; Defendant's reason for terminating Stepanishen's employment were pretextual.

## V.    CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests this Court to deny Defendant's Motion for Summary Judgment.

Respectfully submitted,

**SANFORD LAW FIRM, PLLC**

Kirkpatrick Plaza
10800 Financial Centre Pkwy., Suite 510
Little Rock, Arkansas 72211
(501) 221-0088 (office)
(888) 787-2040 (fax)

Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com

Page 23 of 23
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW
Response to Motion for Summary Judgment