IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* Steven Stepanishen, and STEVEN STEPANISHEN, individually,<br><br>Plaintiffs,<br><br>v.<br><br>BEI PRECISION SYSTEMS & SPACE COMPANY, INC.,<br><br>Defendant. | Civil Action No.<br>4:20-cv-414-BRW |

### RESPONSE TO DEFENDANT'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff and *qui tam* Relator Steven Stepanishen ("Stepanishen"), by and through his undersigned counsel the Sanford Law Firm, PLLC, and for Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts, and in support thereof, Stepanishen states and alleges as follows:

1.  Stepanishen worked at BEI from 1998 to March 5, 2020, when he was terminated from his job as a reliability engineer. Ex. 1, Excerpts from Dep. of Stepanishen, at 13, 25.

    **RESPONSE**: Admitted.

2.  Stepanishen described his role as being "in charge of conducting failure analysis on products that had failed or components that had test issues or failures" during acceptance or qualification testing. *Id*. at 25, 31.

Page 1 of 15
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW
Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts

**RESPONSE**: Admitted.

3.  That work required Stepanishen "to provide the root cause of the failure, . . . to explain[] what happened." *Id*. at 26.

**RESPONSE**: Admitted.

4.  Part of Stepanishen's failure analysis was to ensure that the quality of the product matched the customer's requirements. *Id*. at 66.

**RESPONSE**: Admitted.

5.  Stepanishen filled "oversight functions" and acted as a "gatekeeper[] to ensure every aspect of the end item, from part selection, piece part procurement, the electrical and mechanical design, manufacturing processes and procedures, and acceptance and qualification testing did not pose a reliability risk, and that all contractual and technical requirements were met." *Id*. at 66–67.

**RESPONSE**: Admitted.

6.  Stepanishen was terminated from his job at BEI following a series of incidents in which he acted inappropriately toward colleagues and customers. Ex. 2, Parker Dec., at ¶ 16.

**RESPONSE**: Admitted in part. Stepanishen admits that his termination followed a series of incidents in which he was accused of acting inappropriately toward colleagues and customers. The series of incidents likewise directly followed Stepanishen's report to Steven Parker ("Parker") in which he told Parker that Defendant had committed fraud by failing to debug the design of Defendant's NanoSeries Encoders prior to manufacturing the encoders for its customers. Dep. of Steven Stepanishen ("Dep. Stepanishen") 28:24–31:21, 62:3–24, attached as Ex. B. The incidents that Defendant maintains were the cause of Stepanishen's

Page 2 of 15
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW
Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts

termination were manufactured to create reason to terminate Stepanishen's employment in retaliation for his reports regarding Defendant's questionable practices surrounding the NanoSeries encoders. *See* Letter from Ray Reed, attached as Ex. D (stating that Stepanishen did not behave unprofessionally during the meeting that was the basis of the Last Chance Agreement); Decl. of Wilf Schultheis ("Decl. Schultheis") ¶ 7–8 (stating that although Schultheis admonished Stepanishen for discussing Parker's discontent with Stepanishen's performance in an inappropriate forum, he did not report Stepanishen for unprofessional behavior and only provided an account of the interaction after Parker approached him about it).

7. Stepanishen had multiple confrontations with co-workers. *Id*. at ¶ 5. He sent emails to colleagues that upset them. *Id*. at 6.

**RESPONSE**: Objection. Stepanishen does not have the requisite knowledge to admit or deny the state of mind of email recipients. Subject to the objection, denied. Stepanishen had been working for Defendant for 20 years at the time of these "confrontations," and did not receive any criticism or discipline for his workplace interactions until after he reported fraud to Parker. Decl. of Steven Stepanishen ("Decl. Stepanishen") ¶ 5, attached as Ex. A. Moreover, many of these reports were exaggerated or manufactured; although Stepanishen was accused of unprofessional behavior during meetings, employees who attended these meetings did not think that Stepanishen was unprofessional or inappropriate. Letter from Ray Reed; Decl. Schultheis ¶ 7–8.

8. On October 30, 2019, Steven Parker, who was Stepanishen's supervisor, emailed him and asked him "to stop alienating the team and be part of the solution" and to

Page 3 of 15
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW
Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts

stop sending "extended emails with everyone on blast" that harmed relationships and made resolving issues difficult. *Id*. at ¶ 6; Ex. A to Ex. 2.

**RESPONSE**: Admitted. This email was the first time in Stepanishen's 20 years of employment with Defendant that Stepanishen's behavior was called into question. Decl. Stepanishen ¶ 5, 18–23. Steven Parker sent the email a mere two weeks after Stepanishen first raised concerns about the NanoSeries encoders. *Id*. at ¶ 23.

9.   Stepanishen did not abide by Parker's request. On December 17, 2019, Stepanishen attended a lunch meeting with a customer at which Stepanishen became angry, banged on a desk, and ranted for several minutes. Ex. 2 at ¶ 7. After the meeting, Stepanishen argued with a colleague. *Id*.

**RESPONSE**: Denied. To begin with, the phrase "attended a lunch meeting with a customer" is heavily misleading; the customer "attended" the meeting via telephone. Decl. Stepanishen ¶ 28. Moreover, Stepanishen did not bang on a desk or raise his voice during the meeting. Dep. Stepanishen 87:5–90:14; Decl. Stepanishen ¶ 27. The customer requested that Stepanishen include additional information in his report. Decl. Stepanishen ¶ 27. Stepanishen pushed back only slightly, stating that the information was not relevant and that it would take several hours to rewrite the report and could not be done that. *Id.*. When the customer insisted, Stepanishen simply said okay. *Id.*. When the customer hung up, one of Stepanishen's supervisors cursed at Stepanishen and accused him of unprofessional behavior. *Id*. at ¶ 28. Another employee who attended the meeting stated that Stepanishen behaved professionally at all times. *See* Letter from Ray Reed.

**Page 4 of 15**
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW
**Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts**

10. Stepanishen had also had issues with his job performance, including failure to perform his job duties, missing issues with products, and showing up late and unprepared to meetings during which he looked at his phone rather than paying attention. *Id*. at ¶ 10.

**RESPONSE**: Denied. Defendant cut back its reliability department in 2018, leaving Stepanishen the only reliability engineer. Decl. Stepanishen ¶ 6. This left Stepanishen performing the work formerly handled by five. *Id*. From 2018 to the fall of 2019, Stepanishen performed this work efficiently and received no complaints from either co-workers or customers. *Id*. at ¶ 7. During the fall of 2019, immediately following Stepanishen's first report of fraud to Parker, Defendant's department heads began to demand prioritization on their respective projects and give unrealistic demands as to how Stepanishen could handle the workflow. *Id*. at ¶ 7, 33. Any perceived lack of job performance was manufactured by Defendant itself in its unreasonable expectations that Stepanishen perform all of his work at the same time. Likewise, the accusations that Stepanishen did not attend meetings or did not engage in the meetings he did attend are false. The meetings that Defendant claims Stepanishen skipped were voluntary meetings in which attendees drift in and out based on their availability. *Id*. at ¶ 34. Stepanishen did not ignore the meetings in favor of his phone; he used his phone at one meeting in order to explore an avenue relevant to the discussion. *Id*.

11. After the December 17 incident, Parker met with Stepanishen and discussed these issues with his job performance. Ex. 2 at ¶ 11.

**RESPONSE**: Admitted.

12. At that meeting, Stepanishen signed a "Last Chance Agreement" as condition of continued employment at BEI. *Id*.; Ex. B to Ex. 2; Ex. 1 at 86.

Page 5 of 15
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW
Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts

**RESPONSE**: Admitted.

13. Under the Last Chance Agreement, Stepanishen agreed as a condition of continued employment (1) "to refrain from any disruptive behavior and [to] act in a professional manner at all times"; (2) "to follow direction from Program Management on all customer interactions"; (3) "to abide by all company rules and regulations"; and (4) "to keep personal issues from affecting the workplace and his productivity." Ex. 2 at ¶ 12; Ex. B to Ex. 2.

**RESPONSE**: Admitted.

14. Stepanishen also agreed in the Last Chance Agreement that any violation of any of those four conditions would be "grounds for immediate termination" for two years. *Id*.

**RESPONSE**: Admitted.

15. Despite agreeing that violating the conditions in the Last Chance Agreement would be grounds for termination, Stepanishen did not comply with those conditions. Ex. 2 at ¶ 14.

**RESPONSE**: Denied. The incidents on which Defendant based its termination of Stepanishen were manufactured and exaggerated to create a plausible reason for terminating Stepanishen's employment other than his raising concerns over Defendant's manufacture of the NanoSeries encoders. Letter from Ray Reed (stating that Stepanishen did not behave unprofessionally during the meeting that was the basis of the Last Chance Agreement); Decl. Schultheis ¶ 7–8 (stating that Schultheis did not report Stepanishen for unprofessional behavior during the meeting that was the basis of Stepanishen's termination).

Page 6 of 15
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW
Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts

16. On March 5, 2020, Wilf Schultheis, Director–Operations for BEI, reported that Stepanishen had behaved inappropriately in a meeting held the previous day. Stepanishen had used the meeting to complain "that his boss was already mad at him for not completing some documentation" and "that his boss had given him a bad appraisal." *Id*. at ¶ 14; Ex. C to Ex. 2.

**RESPONSE**: Denied as written. In response to a direct request from Lori Edwards, Wilf Schultheis stated that Stepanishen had mentioned issues with Stepanishen's boss and Schultheis reminded him that a meeting was not the appropriate forum for that discussion. Ex. C to Decl. of Steven Parker ("Decl. Parker"), ECF No. 47-2; *see also* Decl. Schultheis ¶ 6. Schultheis never accused Stepanishen of behaving inappropriately. *Id*. at ¶ 7. Notably, Edwards did not send her request for until 9 am on March 5, 2020, after Stepanishen's employment had already been terminated and he had been escorted from the building. Decl. Stepanishen ¶ 45 (Stepanishen was fired at 7:30 am); Ex. C to Decl. Parker (email is timestamped 10:58 am).

17. Because this report from Schultheis showed a violation of the Last Chance Agreement, Parker terminated Stepanishen's employment later that day. Ex. 2 at ¶ 15.

**RESPONSE**: Denied. Steven Parker and Lori Edwards did not receive the report from Schultheis until after Stepanishen's employment had already been terminated. *See* Decl. Stepanishen ¶ 45 (Stepanishen was fired at 7:30 am); Ex. C to Decl. Parker (email is timestamped 10:58 am); Decl. Schultheis ¶ 7–8.

18. Parker and Lori Edwards—who worked in human resources for BEI—met with Stepanishen and informed him of his termination. *Id*. Edwards sent a letter to Stepanishen to confirm the termination.

Page 7 of 15
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW
**Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts**

**RESPONSE**: Admitted.

19. Stepanishen's employment was terminated solely because he violated the conditions of the Last Chance Agreement requiring him to refrain from disruptive behavior and to act professionally at all times. Ex. 2 at ¶ 16.

**RESPONSE**: Denied. Stepanishen's employment was terminated because he discovered and reported Defendant's questionable practices with respect to its manufacture of NanoSeries encoders and informed Defendant that he planned to reveal those practices to Defendant's customers. The Last Chance Agreement and the "disruptive behavior" that violated that agreement were mere pretext for terminating Stepanishen's employment to protect Defendant from the ramifications of Stepanishen's failure analysis on the NanoSeries encoders. *See generally*, Decl. Stepanishen.

20. Based on Parker's understanding of what happened at the March 4 meeting as recounted by Schultheis, Stepanishen had failed to act professionally and had disrupted a meeting with his colleagues through his unprofessional behavior. *Id*. at ¶ 16.

**RESPONSE**: Objection. Stepanishen does not have the requisite knowledge to admit or deny Parker's understanding of what happened at the March 4 meeting. Therefore denied. Moreover, Parker did not receive Schultheis's report on the March 4 meeting until after Stepanishen's employment had been terminated and escorted from the building. *See* Decl. Stepanishen ¶ 45 (Stepanishen was fired at 7:30 am); Ex. C to Decl. Parker (email is timestamped 10:58 am); Decl. Schultheis ¶ 7–8.

21. BEI produces components called optical encoders, which are measuring devices that operate by transmitting an optical signal through a coded disk. Ex. 1 at 26.

**RESPONSE**: Admitted.

Page 8 of 15
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW
Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts

22. Sometime in late summer or early fall of 2019, Stepanishen was the only reliability engineer in the reliability department at BEI, a role in which he "was in charge of conducting failure analysis on space encoders that had failed or components that had test issues or failures." *Id*. at 25.

**RESPONSE**: Admitted.

23. A line of encoders called NanoSeries was going into production and experienced "a number of failures, both at the piece part component level, as well as at the encoder level," with several components of the encoders failing. *Id*.

**RESPONSE**: Admitted.

24. Stepanishen thus performed a failure analysis investigation to determine "the root cause of the failure" so that the company would know what happened. *Id*. at 25–26.

**RESPONSE**: Admitted.

25. During Stepanishen's failure analysis investigation of the NanoSeries encoders, he struggled to explain the failures. Ex. 1 at 26. He asked an engineer working on the product if he had tested the encoder previously, and the engineer said that he had not. *Id*.

**RESPONSE**: Denied as written. This statement implies that Stepanishen could not articulate how or why the encoders were failing; Stepanishen understood the failures and could explain what was failing and why. What Stepanishen could not explain was why the encoders were still failing this far into the manufacture process when industry practice dictated that bugs of the sort he was finding are worked out on an earlier model. Dep. Stepanishen 26:1–11; Decl. Stepanishen ¶ 38, 40. Stepanishen asked an engineer why the prototype had not been run through the tests to eliminate the issues he was finding and the

Page 9 of 15
U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.
U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW
Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts

engineer informed him that Defendant had chosen not to work up an engineering model or prototype to debug but skipped straight to the manufacture of the customer's requested product without taking it through the engineering and debugging process. *Id*. at 26:8–27:22; Decl. Stepanishen ¶ 15–16.

26. Stepanishen was dubious and investigated further by talking to the engineering manager, Jim Dyer, who reported that the company had not built engineering models in the lab for debugging during the product development stage. *Id*. at 27–28.

**RESPONSE**: Admitted.

27. Stepanishen was concerned that BEI had told customers that the designs were "mature" when they were, in his view, not "ready for production" and required additional development. *Id*. at 36.

**RESPONSE**: Admitted.

28. Stepanishen discovered the issues with the encoders as part of his work as a reliability engineer. Ex. 1 at 65–66; 67–68; 69; 84.

**RESPONSE**: Admitted.

29. Stepanishen described himself as "in charge of writing the malfunction analysis, and as part of the malfunction analysis, [he had] to come up with, how did the failure occur?" *Id*. at 76.

**RESPONSE**: Admitted.

30. Stepanishen reported the issue to Parker in October or November 2019 to get feedback on how to handle the issue in his malfunction report:

> I went to Steve Parker and I told him[,] I said, you know, we've got a problem, you know, we've got all these [NanoSeries] encoders that, you know, are in test and they're all failing. And as part of my malfunction report, I need to list, you know, the

Page 10 of 15
U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.
U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW
Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts

> root cause of the failure. And engineering tells me that they've never built one of these, we've never debugged one. And, of course, that's a contributory factor as to why they're failing because we never completed design work on it to debug it. And I'm going to have to list that as a potential root cause and I said, I was a little incredulous, I said, How did—how did we sell these to these customers knowing that we hadn't finished the design work on them since they're expecting mature designs that are low risk of failure?

Ex. 1 at 60, 62.

**RESPONSE**: Admitted in part. Stepanishen made this report in October of 2019. Decl. Stepanishen ¶ 18. Otherwise admitted.

31. Parker responded that he believed that building of prototypes had been funded. *Id.* at 60.

**RESPONSE**: Admitted.

32. Stepanishen then continued his investigation by returning to Dyer and confirming his earlier report regarding prototypes. *Id*.

**RESPONSE**: Admitted. Jim Dyer told Stepanishen that he had submitted multiple funding requests and had been denied. Decl. Stepanishen ¶ 15–16. The investigation into whether a prototype had been funded was not part of Stepanishen's job description. Dep. Stepanishen 27:6–28:10, 29:11–30:4.

33. Stepanishen then returned to Parker three or four months later and reported that "engineering has no idea why these things are failing. I can't write a malfunction report that says they're failing, we have no idea." Ex. 1 at 62.

**RESPONSE**: Denied as written. This statement implies that Stepanishen did not understand why the encoders were failing, but Stepanishen knew that the encoders were failing because Defendant had not debugged a prototype according to its usual practice.

Page 11 of 15
U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.
U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW
Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts

Decl. Stepanishen ¶ 13–14. Stepanishen's question to Parker was how to write the failure analysis when no design debug had been performed and no prototype had been built "[b]ecause the way it looks to me is we committed fraud." Dep. Stepanishen 80:3. This was the first time Stepanishen specifically mentioned that he believed Defendant had committed fraud, and the first time he mentioned that the failure analysis sent to the government would include those allegations. Decl. Stepanishen ¶ 40–41.

34. The typical approach would be to discuss prototype testing and determine the difference between the prototype and the production item, but Stepanishen could not do that because of the lack of prototype testing. *Id*.

**RESPONSE**: Admitted.

35. Stepanishen did not know what to write in his malfunction report and did not want to report that the product was not adequately developed before BEI entered the contract. *Id*. at 79.

**RESPONSE**: Denied as written. Stepanishen was *required* to report the reason the encoders were failing and told Parker that he state the reason they failed was because the designs were not mature and had not been debugged prior to manufacture. Decl. Stepanishen ¶ 40. At first, he sought guidance from Parker on what to write in order to give Parker a chance to explain Defendant's fraudulent behavior. *Id*. at ¶ 18. When nothing was done, Stepanishen told Parker Defendant had committed fraud and that he would report it. *Id*. at ¶ 40–41.

36. Stepanishen did not know if BEI ever delivered a defective optical encoder or even if a complaint was made about them. Ex. 1 at 46, 53, 83.

**RESPONSE**: Admitted.

Page 12 of 15
U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.
U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW
Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts

37.     When Stepanishen went to Parker in late 2019 and early 2020, he was not contemplating a whistleblower action. Ex. 1 at 85. Rather, he "was reporting a problem that I knew needed to be resolved." *Id*.

**RESPONSE**: Admitted. At the first report, Stepanishen believed Defendant would fix the problem and rework the encoder design. Decl. Stepanishen ¶ 18. Stepanishen did not consider further action necessary until Defendant failed to do so. *Id*. at ¶ 40–41. Stepanishen was fired immediately after threatening to send a failure analysis that included allegations of fraud to NASA and other government subcontractors. *Id*. at ¶ 44.

38.     Stepanishen agreed that making that report was his job as a reliability engineer. *Id*.

**RESPONSE**: Admitted. Making the report was his job as a reliability engineer, investigating and including allegations of fraud in the report was not. Dep. Stepanishen 27:6–28:10, 29:11–30:4.

39.     Stepanishen did not report the issues to the government. *Id*. at 123.

**RESPONSE**: Admitted.

40.     When Stepanishen was fired in March 2020, he believed that it was an act of disability discrimination because he had an issue with anxiety. Ex. 1 at 123–24.

**RESPONSE**: Denied as written. Based on his experiences with Parker and others in Defendant's upper management leading up to his termination, Stepanishen knew the dissatisfaction expressed in his work performance and behavior was a pretext creating a justifiable cause for termination. Decl. Stepanishen ¶ 32. Stepanishen believed that Defendant used his disability to create an environment in which he would feel pressured to lash out. *Id*. at ¶ 46. Stepanishen never believed that he was fired because of his disability

Page 13 of 15
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW
Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts

but believed that Defendant used his disability as a pressure point to create a pretextual reason to fire him. *Id.*

41. Two months after he filed the complaint in this action, Stepanishen submitted an EEOC charge claiming that he had been terminated because of a disability. *Id.* at 125.

**RESPONSE**: Admitted.

42. Stepanishen testified that he believed that his termination "was possibly a combination of both" whistleblowing retaliation and disability discrimination. *Id.* at 128.

**RESPONSE**: Denied as written. Stepanishen was adamant that his termination was due to whistleblowing and wanted allegations of whistleblowing included in his EEOC claim. Dep. Stepanishen Dep. Stepanishen 144:17–25.

43. He wanted his EEOC charge to include both causes, but the EEOC representative would not include the retaliation basis. *Id.* at 132, 141.

**RESPONSE**: Admitted.

44. Parker says that he terminated Stepanishen based solely on his violation of the Last Chance Agreement and that the termination had nothing to do with the issues about the optical encoders. Ex. 2 at ¶¶ 16, 17.

**RESPONSE**: Objection. Stepanishen does not have the requisite knowledge to admit or deny Parker's subjective intent when he terminated Stepanishen's employment. Subject to the objection, admitted that Parker's affidavit states that Parker terminated Stepanishen's employment based solely on his violation of the Last Chance Agreement, denied that the violation of the Last Chance Agreement was the actual basis for Stepanishen's termination. The Last Chance Agreement and its violation were both premised on Stepanishen's "disruptive" and unprofessional behavior, but employees who attended the meetings which

Page 14 of 15
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW
Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts

led to the Last Chance Agreement and Stepanishen's termination state that Stepanishen was neither disruptive nor unprofessional at either meeting. Letter from Ray Reed; Decl. Schultheis ¶ 7.

45. Parker did not understand the optical encoder issue to be anything but Stepanishen doing his job as a reliability engineer, and Stepanishen did not say that he planned to report the issue to the government or to help pursue an action under the FCA. *Id*.

**RESPONSE**: Objection. Stepanishen does not have the requisite knowledge to admit or deny Parker's subjective understanding when Stepanishen informed him that Defendant had committed fraud and Stepanishen would include that in his report to NASA and other government subcontractors. Subject to the objection, admitted in part. Stepanishen admits he did not say that he planned to pursue an action under the FCA. Stepanishen specifically stated that he would include allegations of fraud in his failure analyses, which would be submitted to Defendant's customers, which included NASA and other government subcontractors. Decl. Stepanishen ¶ 40–41.

Respectfully submitted,

**SANFORD LAW FIRM, PLLC**

Kirkpatrick Plaza
10800 Financial Centre Pkwy., Suite 510
Little Rock, Arkansas 72211
(501) 221-0088 (office)
(888) 787-2040 (fax)

Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com

Page 15 of 15
*U.S.A. ex rel Stepanishen v. BEI Precision Systems & Space Co., Inc.*
U.S.D.C. (E.D. Ark.) Case No. 4:20-cv-414-BRW
Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts