IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA                                                            PLAINTIFFS
*ex rel.* STEVEN STEPANISHEN, and
STEVEN STEPANISHEN, Individually

v.                                      NO. 4:20-cv-414-BRW

BEI PRECISION SYSTEMS & SPACE
COMPANY, INC.                                                                        DEFENDANT

**REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**I.
Introduction**

    Despite attaching hundreds of pages of exhibits to his response, Stepanishen fails to show a genuine issue of material fact on his retaliation claim under the False Claims Act's ("FCA") anti-retaliation provision. In response to BEI's argument that he cannot prove a prima facie case of retaliation, Stepanishen fails to show that raising issues as part of his job as a reliability engineer was protected conduct. He then fails to show that he engaged in protected conduct. He also fails to distinguish controlling precedent establishing that Stepanishen cannot show that his termination was motivated solely by protected conduct in the face of undisputed evidence that BEI terminated him for his workplace behavior that predated the complaints about optical encoders on which he bases his claim. And, finally, Stepanishen has failed to show that the stated reason for his termination was pretextual, which requires more than questioning the accuracy of the decision-

maker's perceptions of his behavior. Because no genuine issues of material fact remain, the Court should grant summary judgment for BEI.

## II.
## Argument

Stepanishen concedes that the *McDonnell Douglas* framework applies here. Doc. 52 at 8. BEI argued that Stepanishen could not show neither a prima facie case nor that the proffered reason for his firing was pretextual. *See United States ex rel. Strubbe v. Crawford Cnty. Mem'l Hosp.*, 915 F.3d 1158, 1168 (8th Cir. 2019) (reciting elements of the *McDonnel Douglas* test). Stepanishen has not established genuine issues of material fact on either point.

**A.        Stepanishen has failed to establish a prima facie case of FCA retaliation.**

BEI argued that Stepanishen could not establish a prima facie case that (1) he engaged in protected conduct; (2) BEI knew that he engaged in protected conduct; and (3) "the retaliation was motivated solely" by the protected activity. *See Strubbe*, 915 F.3d at 1168. Stepanishen has failed to show a genuine issue of material fact on any of those three elements of a prima facie case of FCA retaliation.

**A.1.     Stepanishen has failed to show that he engaged in protected conduct.**

BEI argued that Stepanishen could not show that he engaged in protected conduct when he reported issues about optical encoders to his boss, Steven Parker, because "merely grumbling to an employer about regulatory violations or reporting wrongdoing to supervisors is not acting in furtherance" of an FCA action. *U.S. ex rel. Ray v. Am. Fuel Cell & Coated Fabrics Co.*, No. 1:09-CV-01016, 2015 WL 874824, at *5 (W.D. Ark. Mar. 2, 2015) (Hickey, J.). Stepanishen responds that he "explicitly stated that he believed [that BEI] had committed fraud and that he

2

planned to include that fact in his failure report that would be provided to the customer." Doc. 52 at 10.  But Stepanishen's characterization of his testimony is incorrect.

Stepanishen cites pp. 61-62 and p. 81 of his deposition in support of that characterization.  But that testimony does not include the word "fraud" or anything like it.  Rather, Stepanishen testified that he told Parker that had "a duty of full disclosure" under which he could not "hide critical information, even if it's our fault" and thus would "tell them [the customer] that they bought a product that['s] never been testified—built or tested before."[1]  Doc. 52-2 at 61.  Later in his deposition, Stepanishen explained that his report was not an effort at whistleblowing—it was part of his job duties as a reliability engineer:

> Q: When you talked to Mr. Parker in October 2019, and then again in January and February of 2020, the conversation about the funding.  Were you contemplating a whistleblower action at that time?
>
> A: No—no—no.  I was reporting a problem that I knew needed to be resolved.  So I wanted it to be fixed.  It had to be fixed.
>
> Q: And again, that was your job.
>
> A: Yeah.

---

[1] Stepanishen attached a declaration to his response that differs from his deposition testimony on this point by saying that he expressly reported fraud.  The Court should disregard Stepanishen's declaration to the extent that it contradicts his deposition testimony about what he said to Parker and why.  *See Bass v. City of Sioux Falls*, 232 F.3d 615, 618 (8th Cir. 1999) ("a party should not be allowed to create issues of credibility by contradicting his own earlier testimony").

*Id.* at 85. Stepanishen did not report "fraud"[2] and did not make his report for the purpose of whistleblowing. Stepanishen's own testimony establishes that he found an issue while doing his job and planned to discuss it in the report that he prepared as part of his job.

Stepanishen's denial that his actions were in furtherance of an FCA investigation entitles BEI to summary judgment on this prong of the prima facie test. *See Strubbe*, 915 F.3d at 1169 (complaints to hospital board about "financial wrongdoing" and investigations into hospital finances were not protected activity because there was no evidence that they were done in furtherance of an FCA violation).

### A.2. Stepanishen has failed to show that BEI knew that he was engaged in protected conduct.

In responding to BEI's argument that he cannot prove that BEI knew that he was engaged in protected conduct when he talked to Parker as part of his job, Stepanishen again relies on his claim to have reported "fraud." As shown in the preceding section of this reply, Stepanishen never expressly reported or alleged fraud—he reported issues with optical encoders that he attributed to a lack of pre-bid testing. He identified and reported those issues as part of his job as a reliability engineer. Nor did Stepanishen report any issue to the government before he was terminated or tell Parker that he planned to do so. Doc. 52-2 at 85; Doc. 47-2 at 4, ¶ 17.

---

[2] Of course, what Stepanishen reported was not fraud at all, as the Court has already ruled. *See* Doc. 28 at 7–8 (dismissing Stepanishen's FCA fraud counts for failure to state a claim).

4

As BEI argued in its brief, "not all complaints by employees to their supervisors put employers on notice of the 'distinct possibility' of False Claims Act litigation." *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 188 (3d Cir. 2001). Stepanishen has not shown that his complaints about the optical encoders put BEI on notice that he was engaging in protected activity. Again, Stepanishen cannot prove an essential element of his FCA retaliation claim. The Court should grant summary judgment.

### A.3. Stepanishen has failed to show that his termination was motivated solely by protected activity.

BEI argued in its motion that Stepanishen could not satisfy the stringent "motivated solely by" causal link required to establish a prima facie case of retaliation under the FCA. *See Sherman v. Berkadia Com. Mortg. LLC*, 956 F.3d 526, 532 (8th Cir. 2020). Stepanishen responds that his supposedly immaculate "employment history" proves that his termination was motivated solely by his reporting of issues with optical encoders (Doc. 52 at 14), but that argument fails because Stepanishen's claim about his employment history is false. The falsity of that claim is shown by Stepanishen's own exhibits, which show that BEI first raised concerns about Stepanishen's inappropriate interactions with others in the workplace as early as his 2017 evaluation, long before he engaged in his alleged protected conduct.

Stepanishen's 2017 evaluation stated that he needed to improve his teamwork "by giving more consideration to how aggressive his participation may be perceived." Doc. 52-5 at 4. His 2018 evaluation expanded on that issue by

concluding that "Steve does need to work on his tact in a number of situations." *Id*. at 8. The same evaluation also stated that Stepanishen's "lapses in tact can create an environment of tension within working groups" that he "works through." *Id*. at 9. And Stepanishen's 2019 evaluation—delivered to him in February 2020, the month before his termination—again cites "lapses in diplomacy and limited surge capacity" that "create tension within some of the working groups," leading to "several direct conflicts in the workplace" and driving issuance of the Last Chance Agreement two months earlier. Doc. 52-6 at 2. Stepanishen's issues thus arose years before he raised the optical encoder issue in late 2019.

      That undisputed history of BEI questioning Stepanishen's inability to work with colleagues precludes a finding that BEI fired Stepanishen "solely for protected activity" and entitles BEI to summary judgment. *See Sherman*, 956 F.3d at 533. This case is much like *Sherman*, in which the summary-judgment evidence showed that while the employer criticized Sherman for his protected conduct, it also disapproved of other parts of his job performance," including his inability to work with colleagues. *Id*. Even "in the light most favorable to Sherman, [that] evidence would not allow a reasonable jury to find that Berkadia fired Sherman solely for protected activity," making summary judgment appropriate on Sherman's FCA retaliation claim. *Id*. Stepanishen's evidence is even less favorable than in *Sherman* because Stepanishen lacks evidence that BEI disapproved of his alleged protected conduct or that it even perceived his complaints as protected conduct. But, just like in *Sherman*, there is a documented history of inappropriate workplace

6

conduct on Stepanishen's part that precludes a finding that his termination was solely for protected activity.

BEI relied on *Sherman* in its summary-judgment brief, but Stepanishen does not distinguish it in his response, likely because he cannot. Stepanishen instead cites cases that do not apply the "motivated solely by" standard. Doc. 52 at 17. His first case, *Bassett v. City of Minneapolis*, 211 F.3d 1097 (8th Cir. 2000), involved Title VII and Minnesota state-law claims, neither of which applies a "solely motivated by" standard like the one that applies here.[3] Stepanishen's second case, *Hudson v. Norris*, 227 F.3d 1047 (8th Cir. 2000), suffers from the same flaw—it involved claims under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act, neither of which applies a "solely motivated by" standard, either.

While non-FCA claims might be persuasive on other aspects of the *McDonnell Douglas* test, "the 'motivated solely by' causal link required as part of the prima facie case of a FCA retaliation claim is tighter than that required in other types of retaliation and discrimination claims where [courts] use the same *McDonnell Douglas* framework" and thus requires different analysis than those other claims on the causation element. *Sherman*, 956 F.3d at 532. *Sherman* does apply that FCA-specific rule and is therefore the binding precedent here. And application of *Sherman* requires summary judgment for BEI based on the undisputed evidence

---

[3] Stepanishen also fails to note that *Bassett*, in which summary judgment for an employer was reversed, was later abrogated in part because it applied an improper "discrimination case exception" to the application of Rule 56. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043, 1059 (8th Cir. 2011) (listing *Bassett* in an appendix of cases applying an improper standard that "should not be followed").

that BEI disapproved of aspects of Stepanishen's job performance that had nothing to do with his optical encoder complaints.

Stepanishen's response to BEI's separate argument that his claim that the termination was due to disability discrimination precludes a finding that retaliation was the sole motivation for his termination is even weaker. Stepanishen does not dispute that he claimed in his EEOC charge that his termination was due to disability. Doc. 52 at 18. That Stepanishen "wanted his discrimination claim to include whistleblowing activities" (Doc. 52 at 19) is irrelevant—the evidence still shows that Stepanishen claimed that he was terminated because of disability discrimination. Stepanishen thus attributed his termination to two separate causes, disability discrimination and FCA retaliation. That assertion of twin causes precludes a finding that protected FCA activity was the *sole* cause of the termination. Faced with similar facts in *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948 (5th Cir. 1994), the Fifth Circuit held that asserting two different causes of termination precluded a claim that refusing to violate the law was the "sole reason" for termination as required for a state-law claim. *Id.* at 951. BEI cited *Robertson*, and Stepanishen makes no effort to distinguish it.

Stepanishen has thus failed to create a genuine issue of material fact as to whether his termination was motivated solely by his complaints about the encoders. BEI is entitled to summary judgment.

\* \* \*

Each of Stepanishen's failures to show a genuine issue of material fact is a separate basis for the Court to grant summary judgment for failure to show a prima facie case of FCA retaliation. The Court should grant the motion.

**B.      Stepanishen has failed to show that BEI's stated legitimate reason for his termination was pretextual.**

The Court should also grant the motion for the additional, separate reason that Stepanishen failed to show that the stated basis for his termination was pretextual. BEI had a legitimate reason for firing Stepanishen—he violated the Last Chance Agreement by complaining about his boss at a meeting. Stepanishen responds by disputing his supervisor's perception of a meeting that indisputably occurred, claiming falsely that his treatment of his colleagues was never an issue before the fall of 2019, and arguing irrelevantly and without authority that BEI should have given him training that would have helped him behave better in the workplace. None of these efforts create a genuine issue of material fact on pretext.

**B.1.    Evidence that Stepanishen and other employees perceived his behavior at the March 4 meeting differently from Parker does not establish pretext because only the decision maker's perception matters.**

By disputing his supervisor's characterization of the conduct that led to his termination, Stepanishen "misunderstands what it means to prove the falsity of the employer's explanation." *Main v. Ozark Health, Inc.*, 959 F.3d 319, 325 (8th Cir. 2020) (quoting *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996 (8th Cir. 2012)).[4] If, for example, "an employer, in explaining a termination, says it believed

---

[4] Though *Main* applied the *McDonnell Douglas* test in the context of claims for age and sex discrimination, the test works the same way regardless of the claim at issue, with the plaintiff having the burden of showing that the proffered

9

that the employee violated company rules, then proof that the employee never violated company rules does not show that the employer's explanation was false." *Id*. at 325–26. Such "proof shows only that the employer's belief was mistaken." *Id*. at 326. Proving that the employer's explanation was false requires more than a mistake—"the employee must show that the employer did not truly believe that the employee violated company rules." *Id*. Here, Steven Parker believed that Stepanishen acted inappropriately at a meeting in violation of the Last Chance Agreement and fired him based on that conclusion.

In his declaration, Parker explained his belief that Stepanishen had acted inappropriately and was fired for that reason. In the fall of 2019, Stepanishen had unprofessional interactions with co-workers and customers and also failed to meet performance expectations. Doc. 47-2 at 1, ¶ 4. Because of those interactions,[5] Parker emailed Stepanishen on October 30, 2019, and requested that he improve his behavior. *Id*. at 2, ¶¶ 5–6. But Stepanishen ignored that request and acted unprofessionally at a meeting with a customer on December 17, 2019. *Id*. at 2, ¶ 7. Parker again discussed the issues with Stepanishen, made clear that he would have to improve his behavior to keep his job, and had Stepanishen sign a Last Chance Agreement as a condition for continued employment. *Id*. at 3, ¶ 11. Among other

---

explanation for the adverse employment action was a pretext for an illegal purpose. *Main* and other cases applying the test in other contexts are thus relevant here.

[5] Stepanishen acknowledged that he had a "bad interaction with Rex Bair" in his written response to his February 2020 performance evaluation, which he attached as an exhibit to his response. Doc. 52-6 at 6. Stepanishen also acknowledged that he had an "issue" with David Dam. *Id*.

10

requirements, the Last Chance Agreement required Stepanishen "to refrain from any disruptive behavior and [to] act in a professional manner at all times" and informed him that any violation of that condition would be "grounds for immediate termination." *Id.* at 3, ¶¶ 12–13. But a few months later, Wilf Schultheis, the Director–Operations for BEI, reported to Parker that Stepanishen had behaved inappropriately at a meeting on March 4, 2020, by complaining about his boss and a bad performance evaluation. *Id.* at 3, ¶ 14. Based on that report, Parker believed that Stepanishen had violated the Last Chance Agreement, so he fired Stepanishen the next day. *Id.* at 4, ¶¶ 15–16.

Rather than show that Parker did not truly believe that Stepanishen had violated the Last Chance Agreement by behaving inappropriately at the March 4 meeting, Stepanishen argues that Parker's perception of the behavior was wrong. Doc. 52 at 20. But *Main v. Ozark Health* shows that an employee fired for inappropriate behavior in a meeting cannot show pretext by disputing the decision-maker's assessment of that behavior. In that case, Main and her boss, Moore, attended a meeting with a vendor. 959 F.3d at 322. Main asked the vendor questions that Moore considered "to be patronizing and inappropriate." *Id.* Moore also considered a follow-up email that Main sent to the vendor after the meeting to be inappropriate. *Id.* Two months later, Moore fired Main because of her behavior at the meeting, and Main sued for age and sex discrimination. *Id.*

Ozark Health moved for summary judgment and argued that Main could not show that Moore's stated reason for firing Main was pretextual, and Main

11

responded by presenting "her own testimony and the testimony of other meeting attendees [including the vendor] that she acted professionally and was neither rude nor condescending." 959 F.3d at 322. Judge Wright granted the motion because Main failed to show that "*Moore* did not believe that her [Main's] behavior was inappropriate or that his account of her behavior has no basis in fact." *Main v. Ozark Health, Inc.*, No. 4:17-CV-00605-SWW, 2019 WL 11717155, at *4 (E.D. Ark. Jan. 29, 2019) (Wright, J.). "Even if Moore's assessment of Main's behavior was unreasonable," Judge Wright concluded, "the critical question at this stage is whether he sincerely believed that the Main was rude," not whether the assessment was correct. *Id.* The Eighth Circuit affirmed because "while a plaintiff may establish pretext by showing that the employer did not truly believe the employee engaged in the conduct justifying termination, a plaintiff may not establish pretext simply by showing that the employer's 'honest' belief was erroneous, unwise, or even unfair." 959 F.3d at 325.[6]

Stepanishen's argument fails for the same reason—like Main, all Stepanishen does is question whether Parker's perception of the behavior was correct without showing that Parker did not honestly believe that Parker had misbehaved. To that end, Stepanishen, like Main, offers his own characterization of his behavior at the meeting. Doc. 52 at 20; Doc. 52-1 at 15, ¶ 44. Like Main,

---

[6] *Main* also makes clear that this "honest belief" rule applies "regardless of whether the employer's explanation is based on first-hand knowledge [like Moore's] or third-party reports" like the one that Parker relied on here. 959 F.3d at 325.

12

Stepanishen never disputes that the meeting occurred, that he complained about his boss at the meeting, or that he was told that the meeting was not the place for his complaints. And, also like Main, Stepanishen offers another employee's testimony (in the form of an unsworn letter)[7] that "Stepanishen's behavior was not extraordinary and did not warrant the level of discipline he received." Doc. 52 at 20. Stepanishen also attaches a declaration from Wilf Schultheis, the BEI employee who reported the March 4 meeting to Parker. Doc. 52-3 at 2–3, ¶¶ 6–8. Schultheis says that he did not report the behavior "as being unprofessional" but otherwise confirms that he "admonished" Stepanishen for complaining about his boss at the meeting in an "inappropriate" way.[8] Doc. 52-3 at 2–3, ¶¶ 6–8.

Evidence that others—none of whom even dispute that Stepanishen complained about his boss at the meeting—disagree with Parker's perception of it fails to show pretext. At most, Stepanishen has done what Main did by offering a competing characterization of his behavior at the meeting. But, just like in *Main*, others' characterizations do not matter because they do not call into question

---

[7] Aside from its irrelevance, Raymond Reed's unsworn letter (Doc. 52-4) is hearsay, "which cannot be used to avoid summary judgment." *Nagel v. United Food & Com. Workers Loc. 653*, 63 F.4th 730, 735 (8th Cir. 2023) (internal quotation marks and citation omitted). The Court should therefore disregard it altogether.

[8] By acknowledging that Stepanishen's behavior was inappropriate and worthy of admonishment, Schultheis's declaration confirms Parker's basis for concluding that Stepanishen had acted unprofessionally in the meeting. Notably, Schultheis does not dispute Parker's version of events, which is that he received a report about Stepanishen's behavior at the meeting, deemed it a violation of the Last Chance Agreement, and decided to fire Stepanishen the next day.

whether Parker honestly believed that Stepanishen had acted inappropriately based on the information that Parker received.[9] Parker indisputably received information that Stepanishen had acted inappropriately, believed that Stepanishen had therefore violated the Last Chance Agreement, and fired Stepanishen based on that belief.

That others might have viewed the meeting differently does not factor into the analysis because Parker was not required to be correct in concluding that Stepanishen misbehaved. A "proffered legitimate, non-discriminatory reason for termination need not, in the end, be correct if the employer honestly believed the asserted grounds at the time of the termination." *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006). And a "supervisor's assessment of a particular employee's performance is necessarily subjective," which lends itself to the possibility that the supervisor might draw an incorrect conclusion about what happened without violating the law. *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 976 (8th Cir. 2012).

---

[9] Stepanishen questions the timing of the email requesting that Schultheis describe the March 4 meeting in writing, arguing that the email was sent after the termination decision had been made. Doc. 52 at 21. But the email shows that Lori Edwards was already aware of what happened and just wanted it in writing. She asked Schultheis, "when you get a moment, would you please outline what happened during the meeting yesterday." Doc. 47-2. Her email did not mention Stepanishen, but Schultheis responded by recounting Stepanishen's behavior and Schultheis's response to it. *Id*. And Schultheis's declaration—submitted by Stepanishen—confirms that Parker knew what happened at the meeting before Edwards sought details in writing. Doc. 52-3 at 2, ¶ 7.

Parker's subjective determination is all that Stepanishen questions, which leaves the concrete facts undisputed. No witness disputes that the March 4 meeting occurred. No witness disputes that Stepanishen complained about his boss in that meeting. No witness disputes that Schultheis, as he put it, "admonished" Stepanishen for "inappropriate" behavior at that meeting. Every witness agrees that the March 4 meeting occurred and that Stepanishen complained about his boss at that meeting. Parker perceived that undisputed behavior as inappropriate and in violation of the Last Chance Agreement, and a difference of opinion about whether the undisputed behavior was inappropriate cannot establish pretext.

**B.2.    Stepanishen's treatment of colleagues was an issue in his performance evaluations as early as 2017, and favorable evaluations do not suffice to show pretext in any event.**

Stepanishen also claims that his workplace behavior had never been an issue before the fall of 2019 and that this somehow shows pretext. Doc. 52 at 20. But his own exhibits disprove that claim by showing that BEI had raised issues about his behavior toward colleagues in his 2017 and 2018 evaluations, both of which were complete well before Stepanishen raised the optical encoder issue in October 2019. And Stepanishen also fails to address controlling precedent holding that even a clean slate of evaluations does not suffice by itself to show pretext.

Contrary to his claim that his rude workplace behavior was not raised until he reported the optical encoder issue, Stepanishen's 2017 evaluation raised the issue by stating that he needed to improve his teamwork "by giving more consideration to how aggressive his participation may be perceived." Doc. 52-5 at 4. His 2018 evaluation expanded on that issue by concluding that "Steve does need to

15

work on his tact in a number of situations." *Id*. at 8. The same evaluation also stated that Stepanishen's "lapses in tact can create an environment of tension within working groups" that he "works through." *Id*. at 9. And his 2019 evaluation—delivered in February 2020, the month before his termination—again cites "lapses in diplomacy and limited surge capacity" that "create tension within some of the working groups," leading to "several direct conflicts in the workplace" and driving issuance of the Last Chance Agreement. Doc. 52-6 at 2.

These evaluations show that the issues leading to the Last Chance Agreement and ultimately to Stepanishen's termination first arose long before he raised the optical encoder issue in October 2019. And nothing in the evaluations contradicts the reason that Parker gave for terminating Stepanishen. *See Main*, 959 F.3d at 326 (positive annual performance evaluations prepared before incident that led to termination were "not inconsistent with the reason offered by Moore for his decision to terminate Main"). Stepanishen's own exhibits show that BEI fired him for issues that surfaced years before the optical encoder issue.

Nor would a slate of clean evaluations have shown pretext by themselves. The Eighth Circuit has held that "evidence of a strong employment history will not alone create a genuine issue of fact regarding pretext." *Main*, 959 F.3d at 326 (quoting *Strate v. Midwest Bankcentre, Inc.*, 398 F.3d 1011 (8th Cir. 2005)). Strong performance evaluations must be accompanied by something else in the record that might support an inference of illegal intent. *Id*.; *see also Kipp v. Missouri Highway and Transp. Comm.*, 280 F.3d 893, 897-898 (8th Cir. 2002) (holding that plaintiff's

16

"solid track record" prior to termination was irrelevant because courts do not "re-examine an entity's business decisions").

In *Main*, performance evaluations that did not mention complaints and concerns about Main's behavior did not show that the stated reason for the termination was pretext. 959 F.3d at 326–27. Other evidence in the record showed that Main did have a history of such behavior, leading the Eighth Circuit to conclude that "a jury cannot reasonably infer pretext simply from Ozark's limited documentation of Main's history of rude and insubordinate behavior." *Id*. at 327. Here, the sort of behavior that led to Stepanishen's termination is documented in the same performance evaluations that he offers in support of his argument. And those evaluations confirm that Stepanishen's problems with appropriate behavior toward his colleagues long predated his concerns about optical encoders.

Those performance evaluations thus fail to show that the stated reason for Stepanishen's termination—his continued inability to behave appropriately in the workplace—was pretext for FCA retaliation.

### B.3. Stepanishen has presented no authority establishing that declining to provide workplace behavior training establishes pretext.

Stepanishen also argues that BEI's refusal to provide him with "sensitivity training" somehow proves pretext, but he fails to cite even a single authority in support of that argument. *See* Doc. 52 at 20–21. Other courts have rejected such arguments. *See Sharpe v. Utica Mut. Ins.,* 756 F. Supp. 2d 230, 252 (N.D.N.Y. 2010) (rejecting plaintiff's argument that defendant's refusal to reschedule planned training "'demonstrates an inference of pretext' because 'had defendant really

17

wanted to give plaintiff the opportunity to improve her work performance,'" it would have allowed her to attend an earlier class as speculative).

Nothing in the law required BEI to train Stepanishen how to behave respectfully toward his colleagues and customers, so Stepanishen asks the Court to impose a requirement by imposing itself "as a super-personnel department that reexamines an entity's business decisions" to determine what sort of training BEI should have provided. *Canning v. Creighton Univ.*, 995 F.3d 603, 612 (8th Cir. 2021) (quoting *Wilking v. County of Ramsey*, 153 F.3d 869 (8th Cir. 1998)). The analysis of whether a stated reason for termination is pretextual does not indulge such second-guessing. *Id*. Nor does refusing to provide "sensitivity training" to an employee support a *reasonable* inference that terminating the employee for acting unprofessionally in meetings was a pretext for retaliation. *See ACT, Inc. v. Sylvan Learning Sys., Inc.*, 296 F.3d 657, 666 (8th Cir. 2002) (summary judgment non-movant is not entitled "to the benefit of unreasonable inferences, those that amount to nothing more than mere conjecture").

Stepanishen's training argument lacks authority and fails to show that the stated reason for his termination was pretextual.

\* \* \*

All of Stepanishen's pretext arguments fail for the same general reason—he has no proof sufficient to permit an inference of retaliatory intent behind his termination—as well as the specific reasons discussed above. Because Stepanishen

has not shown pretext, BEI is entitled to summary judgment on Stepanishen's FCA retaliation claim.

## III.
## Conclusion

The Court should grant summary judgment for BEI on Stepanishen's FCA retaliation claim because he has failed to prove a prima facie case of retaliation and because he has failed to show that BEI's stated reason for terminating him—his repeated instances of improper workplace behavior—was pretextual.

Regina A. Young (96161)
WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442
ryoung@wlj.com

*Attorneys for Defendant*