IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**UNITED STATES OF AMERICA PLAINTIFFS**
ex rel. STEVEN STEPANISHEN, and
STEVEN STEPANISHEN, Individually                           PLAINTIFF

VS.                               4:20-CV-00414-BRW

**BEI PRECISION SYSTEMS & SPACE
COMPANY, INC.**                                            DEFENDANT

## ORDER

Pending is Defendant's Motion for Summary Judgment (Doc. No. 47). Plaintiff has responded[1] and Defendant has replied.[2] For the reasons stated below, the motion is GRANTED.

### I.   BACKGROUND[3]

Plaintiff worked as a reliability engineer for Defendant. Plaintiff's job included conducting failure analysis on a line of optical encoders used in satellites. Plaintiff worked to determine the cause of these failures and raised concerns to his colleagues about his conclusions to his supervisor, Steven Parker.

Plaintiff was fired on March 5, 2020. Plaintiff filed his Complaint as a *qui tam* Relator on April 16, 2020.[4] He alleges that Defendant violated the False Claims Act ("FCA")[5] by presenting false claims to the United States government for payment ("Count 1") and by making false statements material to a false claim ("Count 2").[6] The Complaint also included an FCA

---

[1] Doc. No. 52.

[2] Doc. No. 55.

[3] Unless otherwise noted, the Background is from the parties' Statement of Facts (Doc. Nos. 49, 53).

[4] Doc. No. 1.

[5] 31 U.S.C. § 3729 *et seq*.

[6] *Id.*

retaliatory discharge claim ("Count 3").[7]  Following an investigation into the allegations, the government decided not to intervene in the case on February 22, 2022.  The Complaint was unsealed and served on Defendant May 2, 2023.

 On July 3, 2023, Defendant filed a Motion to Dismiss all counts in the Complaint.[8]  On September 9, 2023, I dismissed Counts 1 and 2, but denied Defendant's motion to dismiss Count 3.[9]

On March 28, 2024, Defendant filed this Motion for Summary Judgment on the remaining retaliation claim.[10]  Defendant asserts that Plaintiff was fired for breaking the conditions of a "Last Chance Agreement" that required him to stop disruptive behavior, act professionally, follow directions from management, follow company rules, and keep personal issues from affecting his work.[11]  Plaintiff contends Defendant terminated him because he had notified it of problems with the encoders and potential fraudulent activity associated with its production.[12]

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[13]  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that

---

[7]*Id.*

[8]Doc. No. 28.

[9]Doc. No. 38.

[10]Doc. No. 47.

[11]*Id.*

[12]Doc. No. 53.

[13]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed R. Civ. P. 56.

properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[14]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[15]  Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[16]  I must view the facts in the light most favorable to the party opposing the motion.[17]  The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[18]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[19]

III.   DISCUSSION

---

[14]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[15]*Inland Oil & Transp. Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[16]*Id.* at 728.

[17]*Id.* at 727-28.

[18]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[19]*Anderson*, 477 U.S. at 248.

The FCA protects employees from retaliation for lawful acts the employee committed in furtherance of a civil action against the employer for making false claims.[20] Under the statute, an employee is entitled to all relief necessary to make that employee whole if he is:

> discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, or agent on behalf of the employee, contractor, or agent or associated others in furtherance of other efforts to stop 1 or more violations of [the FCA].[21]

There is no direct evidence of retaliation in this case, so the *McDonnell Douglas* framework applies to Plaintiff's claim.[22] To establish a *prima facie* case of FCA retaliation, Plaintiff must show that "(1) [he] engaged in protected conduct, (2) [Defendant] knew [he] engaged in protected conduct, (3) [Defendant] retaliated against [him], and (4) the retaliation was motivated solely by [Plaintiff's] protected activity."[23] If Plaintiff establishes a *prima facie* case, the burden shifts to Defendant to "articulate a legitimate reason for the adverse action."[24] Plaintiff must then show that the reason offered was a mere pretext and that, in fact, retaliatory animus motivated the action.[25] The "motivated solely by" causal link required as part of the *prima facie* case of an FCA retaliation claim is tighter than that required in other types of retaliation and discrimination claims where we use the same *McDonnell Douglas* framework.[26]

---

[20] 31 U.S.C. § 3730(h); *Schuhardt v. Wash. Univ.*, 390 F.3d 563, 566 (8th Cir. 2004).

[21] 31 U.S.C. § 3730(h).

[22] *United States ex rel. Strubbe v. Crawford Cty. Mem'l Hosp.*, 915 F.3d 1158, 1168 (8th Cir. 2019).

[23] *Id.* (quotation marks omitted).

[24] *Id.* (quotation marks omitted).

[25] *Id.*

[26] See, e.g., *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir. 2011) (noting that a Title VII retaliation plaintiff must show as part of his prima facie case that "the adverse action was causally linked to the protected conduct"); *Kneibert v. Thomson Newspapers, Mich. Inc.*, 129 F.3d 444, 454 (8th Cir. 1997) ("The [ADEA retaliation plaintiff] need only show that the retaliatory motive was

A.     *Prima Facie* Case of Retaliation

1.     **Protected Activity**

The parties dispute whether Plaintiff's speaking to his supervisor, Mr. Parker, about his concerns with the optical encoders qualifies as protected activity.

To be classified as protected activity, an employee's conduct must have been both (1) in furtherance of an FCA action and (2) "aimed at matters which are calculated, or reasonably could lead, to a viable FCA action."[27]

"Protected activity" should be interpreted broadly.[28] To be protected, Plaintiff did not necessarily have to file an FCA lawsuit or "have developed a winning claim at the time of the alleged retaliation."[29] On the other hand, "grumbling to an employer about regulatory violations or reporting wrongdoing to supervisors" is not sufficient. There should be some evidence that the employee complained to investigate or assist in the FCA action.[30] Expressing concern about the employer's non-compliance with federal or state regulations is not enough.[31] Complaints about the employer's behavior generally should include some indication of their legal

---

'a contributing factor' as opposed to the sole reason for the adverse employment action." (quoting *Wiehoff v. GTE Directories Corp.*, 61 F.3d 588, 598 (8th Cir. 1995)); *Danzl v. N. St. Paul-Maplewood-Oakdale Indep. Sch. Dist. No. 622*, 706 F.2d 813, 816 (8th Cir. 1983) (noting that a Title VII sex-discrimination plaintiff "need not prove that her sex was the sole reason for the challenged employment decision, but need only prove that sex was a factor in the decision.").

[27]*Id.*

[28]*Collins v. Ctr. for Siouxland*, No. C10-4015-PAZ, 2011 WL 2893038 at *10 (N.D. Iowa, July 15, 2011).

[29]*Schuhardt v. Washington Univ.*, 390 F.3d 563, 567 (8th Cir. 2004) (quoting *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 236 (1st Cir. 2004)).

[30]*U.S. ex rel. Ray v. Am. Fuel Cell & Coated Fabrics Co.*, No. 1:09-CV-01016, 2015 WL 874824, at *6 (W.D. Ark. Mar. 2, 2015).

[31]*Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 187 (3d Cir. 2001).

significance with respect to fraud and the FCA.[32]  The key focus is whether the employee alleged fraud on the government.[33]

Defendant contends that Plaintiff failed to show that he engaged in protected conduct when he reported issues about the encoders to his boss, Mr. Parker, because Plaintiff was not acting in furtherance of an FCA action.  Plaintiff responds that he "explicitly stated that he believed [that Defendant] had committed fraud and that he planned to include that fact in his failure report that would be provided to the customer."[34]  However, Plaintiff's testimony does not bear that out.[35]  Plaintiff testified that he produced the report as a routine part of his job:

> Q: When you talked to Mr. Parker in October 2019, and then again in January and February of 2020, the conversation about the funding. Were you contemplating a whistleblower action at that time?
>
> A: No—no—no. I was reporting a problem that I knew needed to be resolved. So I wanted it to be fixed. It had to be fixed.
>
> Q: And again, that was your job.
>
> A: Yeah.[36]

In his declaration provided with his response to Defendant's motion for summary judgment, Plaintiff asserts that

> the February 2020 meeting was the first time that I told Steven Parker that I believed Defendant had committed fraud in selling products without mature designs and that I planned to include that information in the report that I would send to Defendant's customers, who included NASA, a government agency, and other government

---

[32]See *Ray*, 2015 WL 874824, at *5; *Id.* at 186–87.

[33]*Ray*, 2015 WL 874824, at *6.

[34]Doc. No. 52, p. 10.

[35]Doc. No. 52-2, p. 61.

[36]*Id.* at 85.

subcontractors. Prior to that, I had only suggested that what Defendant had done could possibly be consider potential fraud or at a minimum possibly negligence.[37]

However, this statement is at odds with his deposition testimony. Plaintiff cannot create fact issues with this affidavit in response to a motion for summary judgment.[38]

Viewing the facts in a light most favorable to Plaintiff, his actions do not qualify as protected activity.

### 2. Defendant's Knowledge

Even if Plaintiff engaged in protected activity, he still must show that Defendant had either actual or constructive knowledge of his protected activity to maintain a claim for retaliation.[39] What the employer knows must essentially mirror the activity in which the employee engaged to qualify for FCA protection.[40] Plaintiff must prove Defendant was on notice of the "distinct possibility" of FCA litigation.[41] An employer has sufficient notice of the possibility of litigation when the employee acts in a way that reveals his or her intent to report or assist the government in pursuing an FCA violation.[42]

Plaintiff must prove that Defendant knew that he was engaged in protected conduct when he talked to Mr. Parker. Plaintiff focuses on his alleged "fraud" report. However, as noted above, he simply identified and reported problems with the encoders. No evidence, besides his last-minute declaration, indicates that he reported any issue to the government before he was terminated or told Mr. Parker that he planned to. Nothing in the record shows Defendant was put on notice of possible FCA litigation.

---

[37] Doc. No. 52-1, p. 14.

[38] *Button v. Dakota, Minnesota & E. R.R. Corp.*, 963 F.3d 824, 830 (8th Cir. 2020).

[39] *Schuhardt*, 390 F.3d at 568.

[40] *Hutchins*, 253 F.3d at 188.

[41] *Id.*; *McKenzie v. BellSouth Telecommunications, Inc.*, 219 F.3d 508, 518 (6th Cir. 2000).

[42] *Id.*

### 3. Causation

Even if, Plaintiff had engaged in protective activity and put Defendant on notice of a potential FCA action, Plaintiff cannot satisfy the required "motivated solely by" causal link. Plaintiff asserts that his employment history proves that his termination was motivated solely by his reporting of issues with optical encoders. Plaintiff also focuses on the timing between his meeting with Mr. Parker and his firing.

"Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation."[43] However, temporal proximity is a relevant factor and, for purposes of establishing a *prima facie* case, may be sufficient by itself if the proximity is "very close."[44]

The evidence fails to support the required causal link. Clearly, Plaintiff's supervisor disapproved of at least parts of his job performance. For example, Defendant first raised concerns about Plaintiff's inappropriate workplace interactions in his 2017 evaluation. Plaintiff's 2017 evaluation stated that he needed to improve his teamwork "by giving more consideration to how aggressive his participation may be perceived."[45] His 2018 evaluation stated that "Steve does need to work on his tact in a number of situations."[46] The same evaluation also stated that Plaintiff's "lapses in tact can create an environment of tension within working groups" that he "works through."[47] In 2019, his evaluation, which was given to him a month before his termination, cites "lapses in diplomacy and limited surge capacity" that "create

---

[43] *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc).

[44] *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

[45] Doc. No. 52-5, p. 4.

[46] *Id.* at 8.

[47] *Id.* at 9.

tension within some of the working groups," leading to "several direct conflicts in the workplace."[48]

Plaintiff's work history was not as pristine as he claims. Additionally, Plaintiff's reliance on the proximity between the meeting with Mr. Parker and his firing is also undercut because these work issues began years before he raised any problems with the optical encoders at issue in this case.

In short, after viewing the record in a light most favorable to Plaintiff, he has failed to establish any element for a *prima facie* case of retaliation.

**B.     Pretext**

Based on the record, no genuine issue of material fact on the issue of whether Defendant's stated reason for discharge–his failure to abide by the Last Chance Agreement–is pretextual. Even if Plaintiff could establish a *prima facie* case of retaliation under the FCA, his claim would fail as a matter of law.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (Doc. No. 47) is GRANTED.

IT IS SO ORDERED this 15th day of May, 2024.

                                       BILLY ROY WILSON
                                     UNITED STATES DISTRICT JUDGE

---

[48]Doc. No. 52-6, p. 2.